**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **EDWARD GIBBS,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ.Act.No. 07-36-JJF |
| | ) | |
| **THOMAS CARROLL**, Warden and **JOSEPH R. BIDEN, III**, Attorney General for the State of Delaware | ) | |
| | ) | |
| Respondents. | ) | |

**ANSWER**

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

In October 2003 the petitioner, Edward Gibbs was convicted in a Delaware Superior Court jury trial of escape after conviction. *Gibbs v. State*, 2005 WL 535011 at *2 (Del. 2005) (Exhibit A) (*Gibbs I*). Gibbs was sentenced, as a habitual offender, to twenty years Level V imprisonment, followed by six months of Level IV work release. *Id.* On appeal, the Delaware Supreme Court affirmed Gibbs' conviction and sentence. *See Gibbs I.* In August 2005, Gibbs filed a motion for postconviction relief, which was denied by Superior Court. *State v. Gibbs*, 2006 WL 1149161 (Del. Super. 2006) (*Gibbs II*) (Exhibit B). "Among other claims, Gibbs alleged [in his Superior Court filing] that his defense counsel was ineffective, the Superior Court lacked jurisdiction to try him, and the Superior Court failed to inquire into his conflict with his defense counsel." *Gibbs v. State*, 2006 WL 3455097 at *1 (Del. 2006) (Exhibit C) (*Gibbs III*). The Delaware Supreme Court, affirming the judgment of the Superior Court, held that Gibbs' claims

were either without merit or procedurally barred by the terms of DEL. SUPER. CT. R. 61(i)(3). *Gibbs III* at *2.

While his motion for postconviction relief was still pending before the Delaware Superior Court, Gibbs petitioned for a writ of habeas corpus in this Court. *Gibbs v. Carroll*, 2006 WL 956655 at *1 (D. Del. 2006) (Exhibit D) (*Gibbs IV*). This Court described the circumstances of Gibbs' crime and trial:

> In March 2003, Petitioner arrived at the Sussex Work Release Center ("SWRC") in Georgetown, Delaware, to begin serving the Level IV work release portion of a sentence imposed for a violation of probation. Following a one-week orientation program, Petitioner obtained employment at a chicken house in Laurel, Delaware, and then at the Sussex Pines Country Club in Georgetown, Delaware. On May 25, 2003, Petitioner did not return to the SWRC from his job at the country club, and a warrant was issued for his arrest. Petitioner was apprehended on June 11, 2003 in Georgetown.
>
> On June 12, 2003, Petitioner was charged with violating the terms of his probation. Although a hearing was scheduled, it was continued. On July 18, 2003, Petitioner was charged with escape after conviction, and a jury trial was held on that charge in October 2003. At trial, Petitioner testified that he had not made any effort to contact the SWRC between May 25, 2003, the date he failed to return to the facility, and June 11, 2003, the date on which he was apprehended. The jury convicted Petitioner on the escape charge.
>
> During sentencing, Petitioner moved to dismiss his trial counsel. After a thorough colloquy, the Superior Court permitted Petitioner to proceed *pro se* for the remainder of the proceeding, and directed his trial counsel to serve as standby counsel.

*Gibbs IV* at *1. Because Gibbs had not properly exhausted state remedies on any of his claims, this Court dismissed Gibbs' petition without prejudice. *See Gibbs IV*. After completing state postconviction proceedings, Gibbs filed this instant action.

Discussion

In his petition for federal habeas relief, petitioner raises four grounds for relief: Superior Court erred by not adequately investigating Gibbs' conflict with his attorney; his attorney provided constitutionally defective assistance; the Delaware Supreme Court erred by not considering, on direct appeal, Gibbs' claims of ineffective assistance; and Superior Court lacked jurisdiction over Gibbs because he did not validly waive indictment or a preliminary hearing. (D.I. 3). Because Gibbs has raised these claims before the Delaware Supreme Court in *Gibbs II*, each has been properly exhausted.

Though Gibbs has successfully exhausted all claims presented in the instant appeal, he has failed to show that he is entitled to relief on the merits. As explained by the Third Circuit, a federal court's consideration under §2254(d)(1) of a habeas petitioner's claim proceeds in two steps. The court "must first identify the applicable Supreme Court precedent and determine whether it resolves the petitioner's claim." *Werts v. Vaughn*, 228 F.3d 178, 197 (3d Cir. 2000). *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). To do so, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Werts*, 228 F.3d at 197. *See Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) ("A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous."). Thus, if the Supreme Court has not established "a clear or consistent path" of jurisprudence for state courts to follow, the prisoner is not entitled to relief. *Lockyer*, 538 U.S. at 72. When looking to Supreme Court precedent, the court "must decide the level of specificity at which [it]

decide[s] whether the state decision is contrary to, or unreasonably applies, that precedent. . . . Supreme Court jurisprudence addressing §2254(d)(1) has established that determining the 'clearly established' benchmark should be done on a case-specific level." *Fischetti v. Johnson*, 384 F.3d 140, 148 (3d Cir. 2004). Under §2254(d)(1), "the Court views its precedents in their particular factual settings. The touchstone precedents are not to be examined by looking to broad pronouncements or generative principles in the opinion. The 'materially indistinguishable' test presupposes a fact-specific analysis of the Supreme Court case law." *Fischetti*, 384 F.3d at 148 (citing cases).

"If [the court] determine[s] that the state court decision is not 'contrary to' the applicable Supreme Court precedent, then [the court is] required to advance to the second step in the analysis -- whether the state court decision was based on an 'unreasonable application of' Supreme Court precedent." *Werts*, 228 F.3d at 197. In performing this inquiry, the court is "not authorized to grant habeas corpus relief simply because [it] disagree[s] with the state court's decision or because [it] would have reached a different result if left to [its] own devices." *Werts*, 228 F.3d at 197. Instead, the state court's application of Supreme Court precedent must have "resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Werts*, 228 F.3d at 197. And as with the inquiry under the "contrary to" prong of the statute, "in analyzing habeas claims for unreasonable application of the law, the Supreme Court has looked at its own baseline precedents through a sharply focused lens." *Fischetti*, 384 F.3d at 149. The decisions of state and lower federal courts are relevant in assessing the reasonableness of the state court decision at issue, but "cases not decided by the Supreme Court do not serve as the legal benchmark against which to compare the state decision." *Fischetti*, 384

F.3d at 149.    Finally, in this context, Supreme Court precedent involving the interpretation of federal statutes is not enough; the relevant body of decisional law is that interpreting the federal Constitution. *Early v. Packer*, 537 U.S. 3, 10 (2002) (Supreme Court's holdings on non-constitutional issues are not "relevant to the §2254(d)(1) determination"); *Johnson v. Carroll*, 369 F.3d 253, 259-62 (3d Cir. 2004).

*Claim One:  Court inquiry into Gibbs' dispute with counsel*

Gibbs claims that Superior Court failed to perform an adequate investigation into his dispute with his attorney and, therefore, deprived him of his right to counsel.  Gibbs first evinced his displeasure with his attorney prior to trial – complaining that she had not adequately prepared for his trial.  (D.I. 3 at Ex. 1-3).  As described by the Delaware Supreme Court in *Gibbs I*, Gibbs next voiced his complaints about his attorney before the trial court at sentencing.

> At the December 12, 2003 sentencing proceeding, Gibbs moved to dismiss his trial counsel on the basis of alleged incompetence. The Superior Court denied the motion. Nonetheless, after a lengthy colloquy, the Superior Court permitted Gibbs to proceed *pro se* for the remainder of the proceedings and directed his trial counsel to serve as standby counsel.

*Gibbs I* at *1.  (D.I. 3 at Ex. 5).  Though Gibbs couches his disagreement with his attorney in terms of conflict of interest, he makes no assertion as to what this conflict was.  Though Gibbs might disagree, his dispute with counsel was more a disagreement over legal strategy than a conflict of interest.  (*See* D.I.3 at Ex. 3, 4, 5).  Gibbs' complaints about his attorney were fully explored by the trial court on two occasions – before and after trial.  Superior Court, therefore, engaged in all the inquiry that was required to find the source of Gibbs' displeasure.

When a defendant first evinces dissatisfaction with his attorney, the trial court must inquire as to the reasons for the disagreement. *See United States v. Welty*, 674 F.2d 185, 187-88 (3d Cir. 1982). *See generally Cuyler v. Sullivan*, 446 U.S. 335 (1980) and *Holloway v. Arkansas*, 435 U.S. 475 (1978) (duty to inquire). The trial court more than adequately inquired into Gibbs' claims. *See Gibbs IV*, 2006 WL 956655, at *1 (describing colloquy as "thorough"). Gibbs, accordingly, is not entitled to relief on this claim.

*Claim Two:  Ineffective Assistance of Counsel*

Gibbs next claims that his attorney provided constitutionally defective assistance. Gibbs makes a variety of accusatory statements about his attorney's competence, but states few concrete allegations of ineffectiveness. *See Strickland v. Washington*, 466 U.S. 668 690 (1984) (defendant must identify acts or omissions of counsel); *Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir. 1987). As far as respondents can discern, Gibbs claims that his attorney was ineffective because she did not make the legal arguments he suggested, and she did not subpoena a sitting judge of the Superior Court to testify on his behalf. (D.I. 3 at 3-4). To the extent Gibbs raises any other grounds of ineffectiveness not previously raised before the state supreme court, those claims are procedurally barred as unexhausted and procedurally defaulted. To the extent that Gibbs raises other claims of ineffectiveness not specifically addressed here, they are without merit.

To prevail on a claim of ineffective assistance of counsel, Gibbs must establish that (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. *Strickland*, 466 U.S. at 687-88; *Wells v. Petsock*, 941 F.2d 253, 259 (3d

Cir. 1991). The *Strickland* analysis for a claim of ineffective assistance of counsel constitutes clearly established law under revised §2254. *See Gattis v. Snyder*, 278 F.3d 222, 236 (3d Cir. 2002); *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 434-35 (D.Del. 1998). A habeas petitioner must allege facts which, if accepted as true, would satisfy both prongs of the *Strickland* test: deficient performance and prejudice to the defense. *See Wells*, 941 F.2d at 259-60; *cf. Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689. Thus, to sustain an ineffectiveness claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells*, 941 F.2d at 259-60; *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). "Where prejudice is lacking, the court need not determine whether the performance was subpar." *Marshall v. Hendricks*, 307 F.3d 36, 86 (3d Cir. 2002). Against this backdrop, Gibbs has not established that the state court's decision warrants

relief under § 2254.

The source of the conflict between Gibbs and his attorney appears to be Gibbs' belief that he could not be convicted of escape after conviction while he was on probation or work release. Gibbs was apparently unaware that his status as a probationer, rather than a confined inmate, has no relevance to the charge of escape after conviction. (D.I. 3 at Ex. 5 3-8).

> A person shall be guilty of escape after conviction if such person, after entering a plea of guilty or having been convicted by the court, escapes from a from a detention facility or other place having custody of such person or from the custody of the Department of Health and Social Services or the Department of Correction.

11 Del. C. §1253. *See Holden v. State*, 1998 WL 280356 (Del. 1998) (Exhibit E), *aff'd*, 1997 WL 716907 (Del. Super. 1997) (Exhibit F). *See also Holden v. Kearney*, 2000 WL 1728290 (D.Del. 2000) (Exhibit G). Gibbs does not state what legal arguments he would made to negate guilt at trial but, to the extent that they were premised on his misunderstanding of the law, these arguments would have been unavailing. His attorney could not have been ineffective for failing to advance an incorrect legal argument. *Holden*, 2000 WL 1728290 at *3.

Gibbs next argues that his attorney was ineffective for not calling a sitting Superior Court judge to testify on his behalf. Gibbs does not suggest what the judge would have testified about. Nor does he indicate that the judge would have been willing to testify. In fact, the judge Gibbs wished to subpoena ruled on Gibbs' motion for postconviction relief when it was before the Superior Court:

> I learned defendant put me on his witness list at the time of defendant's sentencing on December 19, 2003. Transcript of December 19, 2003 Proceedings at 10-11. I also learned, upon reviewing Ms. Dunn's affidavit submitted in connection with this matter, that Ms. Dunn refused to subpoena me. There was no basis for subpoenaing me. Defendant cannot attempt to create a conflict with a judge by putting his or her name on a witness list.

*Gibbs II* at *2. Gibbs has simply failed to allege what prejudice he suffered as a result of his attorney's failure to subpoena this particular witness. Accordingly, he is not entitled to relief. Because Gibbs has failed to allege prejudice on any of his ineffectiveness claims, he is not entitled to relief.

*Claim Three: Delaware Supreme Court Error*

Gibbs next claims that the Delaware Supreme Court erred by not considering his ineffective assistance of counsel claim on direct appeal. In Delaware, claims of

ineffective assistance of counsel may not be considered on direct appeal. *E.g. Wright v. State*, 513 A.2d 1310, 1315 (Del. 1986); *Duross v. State*, 494 A.2d 1265 (Del. 1985); *Robinson v. State*, 305 A.2d 307, 308 (Del. 1973). *See also Massaro v. United States*, 538 U.S. 500 (2003); 3 W. LaFave, J. Israel & N. King, CRIMINAL PROCEDURE 631, 633-34 (2d ed. 1999). Gibbs raised, and the Delaware Supreme Court considered, his ineffective assistance of counsel claim on appeal from the Superior Court's denial of his motion for postconviction relief. Accordingly, Gibbs cannot establish that he suffered any prejudice from the state supreme court's delayed consideration of his claim.

*Claim Four: Jurisdictional claim*

Gibbs claims that Superior Court lacked jurisdiction to try him because his waiver of a preliminary hearing was invalid. After arrest, the accused has a right to a judicial determination of probable cause to support his continued restraint. *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). Under Delaware law, such a hearing must be held unless the accused is charged by indictment or waives his right to one. *See* DEL. SUPER. CT. CRIM. R. 5(D).

The record reflects that Gibbs waived his preliminary hearing, in writing, on June 14, 2003. (D.I. 3 at Ex. 1 (waiver form)). The practice of waiving a preliminary hearing is common and is the customary method used by defense counsel to obtain police reports, which are not discoverable under the Superior Court Criminal Rules. *In Re Motion for Postconviction Relief, Def. ID# 92S05488DI* (*State v. Miller*), 1995 WL 656783 at *2 (Del. Super. 1995) (Exhibit H). Superior Court determined that Gibbs had waived preliminary hearing and indictment. *Gibbs II* at *7, 10. That finding is presumptively

correct. 28 U.S.C. §2254(e)(1). Gibbs offers nothing to overcome the state court's finding,[1] and he is not entitled to relief on this claim.

Conclusion

Based upon the Superior Court docket sheet, it appears that transcripts of Gibbs's bond review hearing, final case review, jury trial, and sentencing have been prepared. In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court.

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4612

DATE: May 17, 2007

[1] *See Reese v. Fulcomer*, 946 F.2d 247, 256 n. 4 (3d Cir. 1991); *United States ex rel. Henderson v. Brierley*, 468 F.2d 1193, 1195 (3d Cir. 1972).

H
Gibbs v. State
Del.Supr.,2005.
(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
Edward GIBBS, Defendant Below, Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
**No. 612, 2003.**

Submitted Oct. 14, 2004.
Decided Feb. 4, 2005.

**Background:** Defendant was convicted in the Superior Court of the State of Delaware, in and for Sussex County in S03-06-0519 and S86-12-0243, Cr. ID Nos. 87S00031DI, 0305016899, of escape after conviction. Defendant appealed.

**Holding:** The Supreme Court held that an inmate on pass from a work release facility continues to be in the custody of the Department of Correction.

Affirmed.

**[1] Escape 151 ⟹2**

151 Escape
151k2 k. Escape by Prisoners Without Force. Most Cited Cases
Defendant who was an inmate on pass from a work release facility continued to be in the custody of the Department of Correction and was subject to the penalty for escape when he did not return to the facility from work.

**[2] Sentencing and Punishment 350H ⟹1513**

350H Sentencing and Punishment
350HVII Cruel and Unusual Punishment in General
350HVII(E) Excessiveness and Proportionality of Sentence
350Hk1513 k. Habitual Offenders and Career Criminals. Most Cited Cases
Defendant's twenty-year sentence for the felony conviction of escape after conviction, which is classified as a violent felony, did not give rise to an inference of disproportionality; as an habitual offender with an extensive criminal history, defendant was facing a statutory minimum of eight years to a maximum of life imprisonment. U.S.C.A.Const.Amend. 8.

Court Below-Superior Court of the State of Delaware, in and for Sussex County in S03-06-0519 and S86-12-0243. Cr. ID Nos. 87S00031DI, 0305016899.

Before HOLLAND, BERGER and JACOBS, Justices.

*ORDER*

***1** This 4th day of February 2005, upon consideration of the appellant's opening brief and appendix, the State's motion to affirm and the Superior Court record, it appears to the Court that:

(1) On March 11, 2003, Gibbs arrived at the Sussex Work Release Center (SWRC) in Georgetown, Delaware, to begin serving the Level IV work release portion of a sentence imposed in November 2000 for violation of probation (VOP).FN1 Upon arriving at the SWRC, Gibbs received a manual of the policies, rules and regulations of the corrections facility, including the work release program. During intake, an officer reviewed with Gibbs certain program requirements, including the specific policy that a resident who failed to remain within one hour contact of the SWRC could be placed on escape status.

FN1. *State v. Gibbs*, Del.Super., Cr. ID No. 87S00031DI, Stokes, J. (Nov. 20, 2000). The sentence was modified on October 24, 2001, to address a good time problem and on February 24, 2003, to change Level IV "home confinement" to Level IV "work release."

(2) After a week-long orientation period, Gibbs obtained employment at a chicken house in Laurel,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex. A

Delaware. Gibbs then obtained employment at the Sussex Pines Country Club in Georgetown.

(3) On May 25, 2003, Gibbs did not return to the SWRC from his job at the Sussex Pines Country Club. As a result, a warrant issued the following day for Gibbs' arrest. Gibbs was apprehended without incident on June 11, 2003, in Georgetown.

(4) On June 12, 2003, as a result of his arrest, Gibbs was charged with VOP. A VOP hearing was scheduled and later continued. On July 18, 2003, Gibbs was charged with Escape after Conviction. A jury trial was held on October 30, 2003, on the escape charge.

(5) At the outset of his trial, Gibbs, through counsel, filed a motion to dismiss. After the State rested, Gibbs moved for judgment of acquittal. In the interim, Gibbs requested a jury instruction on the lesser-included offense of Escape in the Second Degree. The Superior Court denied all of the applications.

(6) At trial, Gibbs testified that he made no effort to contact the SWRC between May 25, 2003, when he failed to return to the facility,[FN2] and June 11, 2003, when he was finally apprehended in Georgetown. The jury found him guilty as charged of Escape after Conviction.

FN2. Gibbs testified that when he got off of work on May 25, 2003, he went to see his son, "was with [a] female," "was drinking ... and just fell asleep." Trial Tr. at 91 (Oct. 30, 2003).

(7) At the December 12, 2003 sentencing proceeding, Gibbs moved to dismiss his trial counsel on the basis of alleged incompetence. The Superior Court denied the motion. Nonetheless, after a lengthy colloquy, the Superior Court permitted Gibbs to proceed *pro se* for the remainder of the proceedings and directed his trial counsel to serve as standby counsel.

(8) Prior to imposing the sentence, the Superior Court considered and denied a motion for new trial that had been filed by Gibbs' counsel. The Superior Court then granted the State's motion to have Gibbs declared an habitual offender. Finally, the Court took up the matter of the VOP charge and, after hearing from Gibbs, adjudged him guilty of VOP.

(9) For Escape after Conviction, the Superior Court sentenced Gibbs, as an habitual offender,[FN3] to twenty years incarceration at Level V with credit for time served, followed by six months at Level IV work release. On the VOP, the Superior Court sentenced Gibbs to one year and nine months at Level V, suspended for two years at Level III probation. This *pro se* direct appeal followed.

FN3. Del.Code Ann. tit. 11, § 4214(a).

*2 (10) Earlier in this appeal, Gibbs moved for the appointment of substitute counsel. By Order dated July 8, 2004, the Court denied the motion, ruling that Gibbs' dissatisfaction with his former trial counsel did not, in and of itself, provide a basis for the appointment of substitute counsel on appeal.[FN4] Thereafter, by Order dated August 11, 2004, the Court denied Gibbs' motion for rehearing *en banc* of the July 8 Order. Gibbs now attempts in his opening brief to further challenge the denial of substitute counsel; however, that decision is not subject to further review in this Court.

FN4. *Gibbs v. State,* 2004 WL 1587043 (Del.Supr.).

(11) In his opening brief, Gibbs, who is African American, alleges that his trial by an all-white jury suggests that there was a systematic exclusion of minorities from the jury selection process. He raised a similar claim in his unsuccessful motion for new trial. The claim is without merit. Gibbs has not made a *prima facie* showing that the jury's composition resulted from the systematic exclusion of minority members for racially motivated purposes. [FN5]

FN5. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Riley v. State,* 496 A.2d 997, 1009 (Del.1985).

(12) Next, Gibbs contends that he was entitled to a jury instruction on the lesser-included offense of Escape in the Third Degree. He also contends that the Superior Court erred when instructing the jury on Escape after Conviction. Both claims will be reviewed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

only for plain error,[FN6] as neither claim was raised at trial.[FN7]

FN6. *Wainwright v. State,* 504 A.2d 1096, 1100 (Del.1986).

FN7. Gibbs did not request a jury instruction on the lesser-included offense of Escape in the Third Degree. He requested, and was denied, a jury instruction on the lesser-included offense of Escape in the Second Degree.

(13) The Superior Court did not commit plain error by not instructing the jury on the lesser-included offense of Escape in the Third Degree. There was no rational basis in the evidence for a verdict acquitting Gibbs of Escape after Conviction but convicting him of Escape in the Third Degree.[FN8] Escape in the Third Degree does not require proof, as does Escape after Conviction, of having escaped from a detention facility after having been convicted of a crime.[FN9]

FN8. Del.Code Ann. tit. 11, § 206(c); *Herring v. State,* 805 A.2d 872 (Del.2002).

FN9. *See* Del.Code Ann. tit 11, § 1253 (2001) (providing that a person is guilty of escape after conviction if the person, after entering a plea of guilty or having been convicted by the court, escapes from a detention facility or from the custody of the Department of Health and Social Services or the Department of Correction) (amended 2003); *see* Del.Code Ann. tit 11, § 1251 (providing that a person is guilty of escape in the third degree when the person escapes from custody, including placement of nonsecure facilities by the Division of Youth Rehabilitative Services); *Flamer v. State,* 2002 WL 549544 (Del.Supr.).

(14) Moreover, Gibbs has not demonstrated any error, much less plain error, with respect to the Superior Court's jury instruction on the offense of Escape after Conviction. Contrary to Gibbs' claim, the crime of Escape after Conviction includes an element of "knowledge" of the offense.[FN10]

FN10. Del.Code Ann. tit. 11, § 1258(4) (defining "escape" as "departure from the place in which the actor is held or detained with knowledge that such departure is unpermitted").

[1] (15) Gibbs argues that there was insufficient evidence to prove beyond a reasonable doubt that he was in the custody of the Department of Correction on May 25, 2003, when he was alleged to have escaped. Gibbs' claim is without merit. As a matter of law, an inmate on pass from a work release facility continues to be in the custody of the Department of Correction and is subject to the penalty for escape.[FN11]

FN11. Del.Code Ann. tit., 11 § 6533(b); *Woodlin v. State,* 2001 WL 1006216 (Del.Supr.); *Smith v. State,* 361 A.2d 237 (1976); *Gaskill v. State,* 138 A.2d 500 (1958).

(16) In a related claim, Gibbs argues, as he did in the Superior Court, that because he was serving a sentence imposed on a VOP when he failed to return to the SWRC, he was not subject to a charge of Escape after Conviction. Gibbs' claim is without merit. Gibbs was criminally convicted and was serving the Level IV work release portion of a VOP sentence when he failed to return to the SWRC. Gibbs was properly charged with Escape after Conviction.

***3** [2] (17) Gibbs claims that his twenty-year sentence for Escape after Conviction is grossly disproportionate and in violation of the Eighth Amendment. His claim is without merit. As an habitual offender, Gibbs was facing a statutory minimum of eight years to a maximum of life imprisonment for the Class D felony conviction of Escape after Conviction, which is classified as a violent felony.[FN12] In view of Gibbs' extensive criminal history, which the Superior Court reviewed in detail at sentencing, the twenty-year sentence does not give rise to an inference of disproportionality.[FN13]

FN12. Del.Code Ann. tit. 11, § 4201(c).

FN13. *See McCleaf v. State,* 2004 WL 344423 (Del.Supr.) (holding that habitual offender sentence imposed was not dispro-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

portionate and did not implicate Eighth Amendment).

(18) Gibbs contends that he was not afforded due process, specifically adequate notice, with respect to the VOP charge that the Superior Court considered immediately prior to his sentencing.FN14 His contention is without merit. The record reflects that Gibbs was brought before the Superior Court on June 12, 2003, pursuant to an administrative warrant, and that a VOP hearing was scheduled for June 27, 2003. By letter dated July 1, 2003, addressed to Gibbs, the Superior Court confirmed that the June 27 VOP hearing had been continued and would be rescheduled after disposition of the Escape after Conviction charge.

FN14. Super. Ct.Crim. R. 32.1. "[Due process] requires that a probationer receive notice of the alleged violations of probation, an opportunity to appear and present evidence, a conditional right to confront adverse witnesses, and an independent decision maker." *Gibbs v. State*, 760 A.2d 541, 543 (Del.2000) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973))

(19) Finally, Gibbs argues that his trial counsel was ineffective at trial and on appeal. Gibbs alleges that his counsel discussed with the prosecutor and the trial judge confidential information that was protected by the attorney-client privilege. Moreover, he alleges that his counsel failed to (a) investigate his case; (b) gather exculpatory evidence; (c) subpoena witnesses; (d) present a meaningful defense; (e) raise prosecutorial misconduct; (f) allow him to testify fully at trial and to attend two case conferences; (g) object to an erroneous jury instruction; and (h) assist him on appeal.

(20) It is settled law that this Court will not consider a claim of ineffective assistance of counsel that is raised for the first time on direct appeal.FN15 In this case, Gibbs claimed ineffective assistance of counsel in the motion to dismiss counsel that the Superior Court considered and denied prior to sentencing. Gibbs did not, however, raise all of the allegations that he now seeks to raise in his ineffective assistance of counsel claim on appeal. Moreover, the Superior Court advised Gibbs, when denying his motion dismiss counsel, that he would have an opportunity "in the future," *i.e.* "post [direct] appeal," to pursue his ineffective assistance of counsel allegations under Superior Court Criminal Rule 61 "and [to] make a full record of [his claims]." Under these circumstances, and in order to give effect to the Superior Court's apparent intention to consider an ineffective assistance of counsel claim filed by Gibbs after the conclusion of the direct appeal, we decline to consider Gibbs' ineffective assistance of counsel claim in this appeal.

FN15. *Desmond v. State*, 654 A.2d 821, 829 (Del.1994).

NOW, THEREFORE, IT IS HEREBY ORDERED that the motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED.

Del.Supr.,2005.
Gibbs v. State
872 A.2d 959, 2005 WL 535011 (Del.Supr.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 2006 WL 1149161 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 1

H

State v. Gibbs
Del.Super.,2006.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware,Sussex County.
STATE
v.
GIBBS.
**No. 0305016899.**

Submitted: Dec. 22, 2006.
Decided March 29, 2006.

RICHARD F. STOKES, J.

Dear Mr. Gibbs:

*1 Pending before the Court is a motion for postconviction relief which Edward C. Gibbs ("defendant") has filed pursuant to Superior Court Criminal Rule 61 ("Rule 61"). Also pending are related motions: one seeking my recusal, one for an evidentiary hearing, and one for appointment of counsel.

I address these latter motions first.

The first motion I address is the one seeking my recusal. The law which applies in deciding such a motion appears below.

A judge is required to be impartial in actuality and in appearance. Canon 3C of the Delaware Judges' Code of Judicial Conduct codifies this standard. Therein, it is provided in pertinent part:

Disqualification. (1) A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) The judge has a personal bias or prejudice concerning a party....

As explained in *Los v. Los*, 595 A.2d 381, 384-85 (Del.1991):

Where the basis for the alleged disqualification is a claim, under Cannon 3C(1), that the Judge "has a personal bias or prejudice concerning a party," no per se or automatic disqualification is required. Previous contact between the judge and a party, in the same or a different judicial proceeding, does not require automatic disqualification. [Citations omitted.] To be disqualified the alleged bias or prejudice of the judge "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." [Citation omitted.] ...

When faced with a claim of personal bias or prejudice under Canon 3C(1) the judge is required to engage in a two-part analysis. First, he must, as a matter of subjective belief, be satisfied that he can proceed to hear the cause free of bias or prejudice concerning that party. Second, even if the judge believes that he has no bias, situations may arise where, actual bias aside, there is the appearance of bias sufficient to cause doubt as to the judge's impartiality. [Citation omitted.]

The fact that adverse rulings were made against a defendant in the previous proceedings does not provide a reason for recusal. *Weber v. State*, 547 A.2d 948, 952 (Del.1988), *reargu. den.*, 118 N.J. 319, 571 A.2d 948 (Del.1988); *Brown v. State*, 840 A.2d 641 (Del.2003); *Manchester v. State*, Del.Supr., No. 351, 1997, Berger, J. (April 3, 1998); *In the Matter of the Petition of Joseph A. Wittrock for a Writ of Prohibition*, 649 A.2d 1053 (Del.1994); *Haskins v. State*, Del.Supr., No. 188, 1991, Moore, J. (Aug. 19, 1991); *State v. Fink*, Del.Super., Def. ID# 0003008673, Vaughn, R.J. (July 19, 2002) at 2-3. Previously having sentenced a defendant is not enough to require recusal. *Miller v. State*, Del.Supr., No. 236, 1994, Hartnett, J. (May 9, 1995). Again, to repeat one of the holdings in *Los v. Los*, 595 A.2d at 384, the alleged bias or prejudice " 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.' " *Accord Jackson v. State*, 684 A.2d 745, 753 (Del.1996); *State v. Fink*, Del.Super., Def. ID# 0005008005, Vaughn, R.J. (June 14, 2002) at 5-6, *aff'd*, 817 A.2d 781 (Del.2003).

*2 The objectivity is viewed, not through the eyes of a defendant or his attorney, but from an objective ob-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex. B

Not Reported in A.2d
Not Reported in A.2d, 2006 WL 1149161 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 2

server's viewpoint. *State v. Phillips,* Del.Super., Def. ID# 0201017168, Ableman, J. (July 3, 2003) at 12-13. As explained in *State v. Phillips, supra* at 16-17:

[T]here is a compelling policy reason for a judge not to disqualify herself at the behest of a party who claims an appearance of prejudice, without a factual or reasonable objective basis to do so. In the absence of genuine bias, a litigant should not be permitted to shop for a judge of his or her choosing.... In short, the orderly administration of justice cannot be subject to a party's self-created, unsupported claims of prejudice or the appearance of bias.

A party must set forth facts showing impartiality or the claim fails. *Bennett v. State,* Del.Supr., No. 110, 1994, Holland, J. (December 19, 1994); *Browne v. State,* Del.Super., Def. ID# 93K00678, Ridgely, P.J. (May 11, 1993), *aff'd,* Del.Supr., No. 184, 1993, Moore, J. (Dec. 30, 1993).

In this case, defendant advances several reasons for why I should recuse myself.

The first basis asserted is that when defendant objected to the all white jury panel, I stated that the jury panel was selected in accordance with the statute. That I stated a fact is no basis for recusing myself, and this ground fails.

The second ground is there was a conspiracy to have me preside over the case rather than another judge. In support of that argument, defendant maintains Judge Graves and Judge Bradley previously had been assigned to hear the case.

Only in special circumstances, such as first degree murder cases, are judges in Sussex County assigned to a specific case. Contrary to defendant's contentions, no other judge ever was assigned to handle his case. I did not actively seek to hear the case. My presiding over the trial in this matter was by happenstance. There was no conspiracy.

Defendant's next argument is best quoted:

Movant filed a motion to dismiss counsel, on 12-19-03 Judge Stokes appointed counsel standby, Judge Stokes prejudice [sic] movant on direct appeal counsel didn't assist movant in researching the allegations for direct appeal; Judge Stokes denied movant counsel 12-19-03 the sentencing hearing: violation 6th Amend. 113 f3d 1026 Judge Stokes stated if you had cooperated with Mrs. Dunn you wouldn't be saying these things; that's bias and prejudice; Del. Judges code of Judical [sic] conduct, canon 3((a)-(e)

It is impossible to discern what defendant is arguing. It is defendant's duty to frame his arguments in such a way as to be intelligible. Because he has failed to do so, I do not address this argument.

Defendant's final argument is that he had listed me as a witness and then I had conferences with the attorneys which were not recorded.

I learned defendant put me on his witness list at the time of defendant's sentencing on December 19, 2003. Transcript of December 19, 2003 Proceedings at 10-11. I also learned, upon reviewing Ms. Dunn's affidavit submitted in connection with this matter, that Ms. Dunn refused to subpoena me. There was no basis for subpoenaing me. Defendant cannot attempt to create a conflict with a judge by putting his or her name on a witness list. Furthermore, there were no unrecorded conferences in this matter which dealt with anything other than administrative or scheduling matters.

*3 Defendant's case, as will be seen below, was uncomplicated. I have dealt with defendant in the past; that, however, is not enough to establish bias or prejudice. I do not have any personal bias or prejudice towards him. I am satisfied that I can consider the pending motions free of bias or prejudice.

Furthermore, there is absolutely nothing in the record or in defendant's motion which would provide any objective basis for concluding that the Court's consideration of this postconviction matter will inhibit the public's confidence and integrity in the judicial system. To restate, defendant has not set forth any facts or evidence which would establish a lack of impartiality.

In conclusion, I deny the motion to recuse.

I deny defendant's motions for appointment of counsel and for an evidentiary hearing because, as is clear

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2006 WL 1149161 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 3

from the discussion below, the Court summarily disposes of defendant's various Rule 61 claims.

Before I turn to the postconviction motion, I set forth the facts of the case.

First, defendant was charged with, and convicted of, committing the crime of escape after conviction as codified by 11 *Del. C.* § 1253 (2001). Therein, it was provided in pertinent part:

A person shall be guilty of escape after conviction if such person, after entering a plea of guilty or having been convicted by the court, escapes from a detention facility or from the custody of ... the Department of Correction.

Escape after conviction shall be a class D felony....

Second, during his bond hearing and at trial, defendant freely admitted that on May 25, 2003, he left his job while at Work Release and did not voluntarily return to the Work Release Center nor did he attempt to contact Work Release during the two and a half week period he was gone.

The Supreme Court's decision on defendant's appeal in *Gibbs v. State,* Del.Supr., No. 612, 2003, Berger, J. (Feb. 4, 2005), sets forth the facts thoroughly, and I quote therefrom below.

(1) On March 11, 2003, Gibbs arrived at the Sussex Work Release Center (SWRC) in Georgetown, Delaware, to begin serving the Level IV work release portion of a sentence imposed in November 2000 for violation of probation (VOP).n1 Upon arriving at the SWRC, Gibbs received a manual of the policies, rules and regulations of the corrections facility, including the work release program. During intake, an officer reviewed with Gibbs certain program requirements, including the specific policy that a resident who failed to remain within one hour contact of the SWRC could be placed on escape status.

n1 *State v. Gibbs,* Del.Super., Cr. ID No. 87S00031DI, Stokes, J. (Nov. 20, 2000). The sentence was modified on October 24, 2001, to address a good time problem and on February 24, 2003, to change Level IV "home confinement" to Level IV "work release."

(2) After a week-long orientation period, Gibbs obtained employment at a chicken house in Laurel, Delaware. Gibbs then obtained employment at the Sussex Pines Country Club in Georgetown.

(3) On May 25, 2003, Gibbs did not return to the SWRC from his job at the Sussex Pines Country Club. As a result, a warrant issued the following day for Gibbs' arrest. Gibbs was apprehended without incident on June 11, 2003, in Georgetown.

*4 (4) On June 12, 2003, as a result of his arrest, Gibbs was charged with VOP. A VOP hearing was scheduled and later continued. On July 18, 2003, Gibbs was charged with Escape after Conviction. A jury trial was held on October 30, 2003, on the escape charge.

(5) At the outset of his trial, Gibbs, through counsel, filed a motion to dismiss. After the State rested, Gibbs moved for judgment of acquittal. In the interim, Gibbs requested a jury instruction on the lesser-included offense of Escape in the Second Degree. The Superior Court denied all of the applications.

(6) At trial, Gibbs testified that he made no effort to contact the SWRC between May 25, 2003, when he failed to return to the facility,n2 and June 11, 2003, when he was finally apprehended in Georgetown. The jury found him guilty as charged of Escape after Conviction.

n2 Gibbs testified that when he got off of work on May 25, 2003, he went to see his son, "was with [a] female," "was drinking ... and just fell asleep." Trial Tr. at 91 (Oct. 30, 2003).

(7) At the December 12, 2003 sentencing proceeding, Gibbs moved to dismiss his trial counsel on the basis of alleged incompetence. The Superior Court denied the motion. Nonetheless, after a lengthy colloquy, the Superior Court permitted Gibbs to proceed pro se for the remainder of the proceedings and directed his trial counsel to serve as standby counsel.

(8) Prior to imposing the sentence, the Superior Court considered and denied a motion for new trial that had been filed by Gibbs' counsel. The Superior Court then granted the State's motion to have Gibbs declared an habitual offender. Finally, the Court took up the matter of the VOP charge and, after hearing from Gibbs, adjudged him guilty of VOP.

(9) For Escape after Conviction, the Superior Court sentenced Gibbs, as an habitual offender,n3 to twenty years incarceration at Level V with credit for time served, followed by six months at Level IV work re-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2006 WL 1149161 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 4

lease. On the VOP, the Superior Court sentenced Gibbs to one year and nine months at Level V, suspended for two years at Level III probation. This pro se direct appeal followed.

n3 *Del.Code Ann.* tit. 11, § 4214(a).

(10) Earlier in this appeal, Gibbs moved for the appointment of substitute counsel. By Order dated July 8, 2004, the Court denied the motion, ruling that Gibbs' dissatisfaction with his former trial counsel did not, in and of itself, provide a basis for the appointment of substitute counsel on appeal.n4 Thereafter, by Order dated August 11, 2004, the Court denied Gibbs' motion for rehearing en banc of the July 8 Order. Gibbs now attempts in his opening brief to further challenge the denial of substitute counsel; however, that decision is not subject to further review in this Court.

n4 *Gibbs v. State,* 2004 Del. LEXIS 303, 2004 WL 1587043 (Del.Supr.).

(11) In his opening brief, Gibbs, who is African American, alleges that his trial by an all-white jury suggests that there was a systematic exclusion of minorities from the jury selection process. He raised a similar claim in his unsuccessful motion for new trial. The claim is without merit. Gibbs has not made a prima facie showing that the jury's composition resulted from the systematic exclusion of minority members for racially motivated purposes.n5

n5 *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Riley v. State,* 496 A.2d 997, 1009 (Del.1985).

***5** (12) Next, Gibbs contends that he was entitled to a jury instruction on the lesser-included offense of Escape in the Third Degree. He also contends that the Superior Court erred when instructing the jury on Escape after Conviction. Both claims will be reviewed only for plain error,n6 as neither claim was raised at trial.n7

n6 *Wainwright v. State,* 504 A.2d 1096, 1100 (Del.1986).

n7 Gibbs did not request a jury instruction on the lesser-included offense of Escape in the Third Degree. He requested, and was denied, a jury instruction on the lesser-included offense of Escape in the Second Degree.

(13) The Superior Court did not commit plain error by not instructing the jury on the lesser-included offense of Escape in the Third Degree. There was no rational basis in the evidence for a verdict acquitting Gibbs of Escape after Conviction but convicting him of Escape in the Third Degree.n8 Escape in the Third Degree does not require proof, as does Escape after Conviction, of having escaped from a detention facility after having been convicted of a crime.n9

n8 *Del.Code Ann.* tit. 11, § 206(c); *Herring v. State,* 805 A.2d 872 (Del.2002).

n9 *See* *Del.Code Ann.* tit 11, § 1253 (2001) (providing that a person is guilty of escape after conviction if the person, after entering a plea of guilty or having been convicted by the court, escapes from a detention facility or from the custody of the Department of Health and Social Services or the Department of Correction) (amended 2003); *see* *Del.Code Ann.* tit 11, § 1251 (providing that a person is guilty of escape in the third degree when the person escapes from custody, including placement of nonsecure facilities by the Division of Youth Rehabilitative Services); *Flamer v. State,* 794 A.2d 1160, 2002 WL 549544 (Del.Supr.).

(14) Moreover, Gibbs has not demonstrated any error, much less plain error, with respect to the Superior Court's jury instruction on the offense of Escape after Conviction. Contrary to Gibbs' claim, the crime of Escape after Conviction includes an element of "knowledge" of the offense.n10

n10 *Del.Code Ann.* tit. 11, § 1258(4) (defining "escape" as "departure from the place in which the actor is held or detained with knowledge that such departure is unpermitted").

(15) Gibbs argues that there was insufficient evidence to prove beyond a reasonable doubt that he was in the custody of the Department of Correction on May 25, 2003, when he was alleged to have escaped. Gibbs' claim is without merit. As a matter of law, an inmate on pass from a work release facility continues to be in the custody of the Department of Correction and is subject to the penalty for escape.n11

n11 *Del.Code Ann.* tit., 11 § 6533(b); *Woodlin v. State,* 782 A.2d 267, 2001 WL 1006216 (Del.Supr.); *Smith v. State,* 361 A.2d 237 (1976); *Gaskill v. State,* 51 Del. 107, 138 A.2d 500, 1 Storey 107 (1958).

(16) In a related claim, Gibbs argues, as he did in the Superior Court, that because he was serving a sentence imposed on a VOP when he failed to return to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2006 WL 1149161 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 5

the SWRC, he was not subject to a charge of Escape after Conviction. Gibbs' claim is without merit. Gibbs was criminally convicted and was serving the Level IV work release portion of a VOP sentence when he failed to return to the SWRC. Gibbs was properly charged with Escape after Conviction.

(17) Gibbs claims that his twenty-year sentence for Escape after Conviction is grossly disproportionate and in violation of the Eighth Amendment. His claim is without merit. As an habitual offender, Gibbs was facing a statutory minimum of eight years to a maximum of life imprisonment for the Class D felony conviction of Escape after Conviction, which is classified as a violent felony.n12 In view of Gibbs' extensive criminal history, which the Superior Court reviewed in detail at sentencing, the twenty-year sentence does not give rise to an inference of disproportionality.n13

n12 *Del.Code Ann.* tit. 11, § 4201(c).

n13 *See* *McCleaf v. State*, 2004 WL 344423 (Del.Supr.) (holding that habitual offender sentence imposed was not disproportionate and did not implicate Eighth Amendment).

(18) Gibbs contends that he was not afforded due process, specifically adequate notice, with respect to the VOP charge that the Superior Court considered immediately prior to his sentencing.n14 His contention is without merit. The record reflects that Gibbs was brought before the Superior Court on June 12, 2003, pursuant to an administrative warrant, and that a VOP hearing was scheduled for June 27, 2003. By letter dated July 1, 2003, addressed to Gibbs, the Superior Court confirmed that the June 27 VOP hearing had been continued and would be rescheduled after disposition of the Escape after Conviction charge.

n14 Super. Ct.Crim. R. 32.1. "[Due process] requires that a probationer receive notice of the alleged violations of probation, an opportunity to appear and present evidence, a conditional right to confront adverse witnesses, and an independent decision maker." *Gibbs v. State*, 760 A.2d 541, 543 (Del.2000) (*citing* *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973))

***6** The Supreme Court affirmed the judgments of the Superior Court.

Before addressing the Rule 61 claims, I take note of claims defendant advances which Rule 61 does not authorize. In grounds twenty-seven and twenty-eight, defendant sets forth two arguments contending that the Supreme Court erred. This Court does not have jurisdiction to consider such claims and accordingly, the Court ignores them.

I now turn to the Rule 61 claims. The first step this Court takes is to determine if the claims defendant advances in this Rule 61 motion may proceed or if they are procedurally barred. In the version of Rule 61(i) which applies to defendant's case, it is provided as follows:

*Bars to relief.* (1) Time limitation. A motion for postconviction relief may not be filed more than three years after the judgment of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than three years after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court.

(2) Repetitive motion. Any ground for relief that was not asserted in a prior postconviction proceeding, as required by subdivision (b)(2) of this rule, is thereafter barred, unless consideration of the claim in warranted in the interest of justice.

(3) Procedural default. Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows

(A) Cause for relief from the procedural default and

(B) Prejudice from violation of the movant's rights.

(4) Former adjudication. Any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred, unless reconsideration of the claim is warranted in the interest of justice.

(5) Bars inapplicable. The bars to relief in paragraphs (1), (2), and (3) of this subdivision shall not apply to a claim that the court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2006 WL 1149161 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 6

Defendant's motion is timely filed. Rule 61(i)(1).

Defendant has advanced a number of claims which are procedurally barred because they previously have been decided or defendant had the opportunity to raise them on appeal but failed to do so and defendant failed to make any attempt to establish that any exception to the procedural bars exists. Thus, the following claims are denied as they are procedurally barred:

Ground fifteen: Judge Bradley abused his discretion
Ground sixteen: Judge Stokes abused his discretion
Ground seventeen: movant denied right to testify
*7 Ground eighteen: movant was tried by all white jury
Ground nineteen: Judge Stokes committed plain error
Ground twenty: Judge Stokes committed plain error
Ground twenty-one: Judge Stokes committed plain error
Ground twenty-two: Judge Stokes was not fair or impartial
Ground twenty-three: Judge Stokes should have recused himself
Ground twenty-four: The transcripts are missing information
Ground twenty-five: movant sentenced as habitual offender
Ground twenty-six: movant denied probation violation hearing
Ground twenty-nine: Superior Court errored [sic]
Ground thirty: Superior Court errored [sic]
Ground thirty-two: prosecutorial misconduct

Defendant also advances numerous instances of ineffective assistance of counsel. Since this is the first time defendant could advance these claims, they are not procedurally barred.[FN1]

FN1. Defendant actually has advanced many of these claims previously both before the Supreme Court, *Gibbs v. State,supra* at 8-9, and the Superior Court, Transcript of December 19, 2003 Proceedings. Neither court ruled on the claims; thus, they are not procedurally barred.

To establish a claim of ineffective assistance of counsel, defendant must show that trial counsel's representation fell below an objective standard of reasonableness and but for the attorney's unprofessional errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). With regard to the actual prejudice aspect, "[d]efendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. at 694. In advancing a claim for ineffective assistance of counsel, a defendant must set forth specific, concrete allegations; vague, conclusory allegations fail. *Younger v. State*, 580 A.2d 552, 555 (Del.1990).

Trial counsel was Carole J. Dunn, Esquire. She has submitted an affidavit in response to the allegations. This affidavit thoroughly addresses each of defendant's argument, which I examine below.

1) Defendant was coerced into waiving his preliminary hearing

Defendant claims a public defender told him he would get a plea deal of thirty days, as allegedly reflected by a written statement on the paperwork. The statement on the waiver is: "Can't we dispose of this case with an Escape 3rd and 30 days 4204k? That is standard." Docket Entry No. 3. Thus, the written statement on the paperwork actually shows that a sentence of thirty days was not offered and his attorney was requesting that such a plea be offered.

Defendant has failed so show how he was coerced into waiving his preliminary hearing. In any case, even if the process was defective, "a defect in the preliminary hearing process, including a defective waiver, has no bearing on a defendant's subsequent conviction." *State v. Bailey*, Del.Super., Def. ID # 0009007758, Silverman, J. (Dec. 13, 2004) at 5, *app. dism.*, Del.Supr., No. 8, 2005, Ridgely, J. (April 11, 2005). Consequently, even if trial counsel was ineffective, defendant has failed to show prejudice. This claim fails.

2) Trial counsel was ineffective for failing to chal-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2006 WL 1149161 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 7

lenge the "defective" information

***8** Defendant argues trial counsel was ineffective for failing to challenge the defective information. He does not specify how the information was defective. The Court does not guess at his argument. This claim fails for vagueness. Younger v. State, 580 A.2d at 555.

3) Counsel failed to appear for arraignment

Defendant argues that trial counsel was not present for arraignment. The Court's judicial action form of the arraignment shows that Mr. Hyde of the Public Defender's Office was present with defendant at the videophone arraignment which took place on August 7, 2003. Docket Entry No. 4. This claim is factually meritless and is denied.

4) Trial counsel was ineffective for failing to visit defendant at prison from June to October, 2003

Trial counsel dealt with defendant over the videophone on July 24, 2003, and in person at case review on September 2, 2003. She also corresponded with him on a regular basis during that time frame. There was no ineffectiveness established merely from her failure to go to the prison to see him. Even if there was, defendant has failed to show how he was prejudiced from her failure to visit him at prison during this time. This claim fails.

5) Trial counsel failed to subpoena the witnesses he listed

Defendant has failed to identify what witnesses he wanted subpoenaed. Thus, this claim fails due to vagueness. *Younger v. State, supra.* In any case, defendant has failed to establish how the failure to subpoena witnesses he wanted subpoenaed constituted prejudice. This claim fails.

6) Trial Counsel admitted she had a conflict with defendant

Defendant misrepresents that trial counsel admitted she had a conflict with defendant. Instead, a review of the transcript of the proceedings of the October 22, 2003, case review show that trial counsel explained to the Court that she and defendant had different views of the law regarding escape after conviction, but that difference did not affect her representation of him. Exhibit 17 to Ms. Dunn's affidavit. Basically, defendant's conflict with trial counsel and everyone else is that he refuses to accept the law for what it is regarding escape after conviction. The law and facts are what they are. The fact defendant maintains they are something else does not create conflict with trial counsel. This claim fails.

7) Trial counsel failed to present a meaningful defense at trial and

8) Trial counsel's performance fell below an objective standard of reasonableness

These arguments are vague and conclusory and fail for those reasons. *Younger v. State, supra.*

In any case, I have reviewed the record in this case, including all the transcripts, Ms. Dunn's affidavit, and defendant's filings on the pending motion. I repeat here what I stated to defendant at the time of his sentencing. This case was a simple case from the State's point of view. At the time of his bond hearing, defendant stated that he "didn't escape from no jail:, that he was in "work release" and that when he went to work, he "just didn't return." Exhibit 19 to Ms. Dunn's affidavit. This case is what commonly is labeled "an open and shut case". Despite that, trial counsel worked very hard on defendant's behalf. She presented defendant with a meaningful defense. She called witnesses and advanced arguments. She made objections. She effectively represented defendant. These claims fail.

9) Trial counsel discussed movant's defense with the prosecutor and the Court

***9** Trial counsel's affidavit clarifies that she did not disclose any confidential or privileged information. Furthermore, defendant has failed to establish any prejudice to his case with regard to any discussion trial counsel had with the prosecutor. This claim fails.

10) Trial counsel was ineffective for failing to object to the prosecutor's misconduct during trial

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Defendant argues it was prosecutorial misconduct for the prosecutor to object to certain testimony to which defendant would testify. Defendant has failed to establish any prosecutorial misconduct. There was nothing to which trial counsel should have objected. This claim fails.

11) Trial counsel was ineffective for advising him not to testify

Defendant actually testified, albeit, against the advice of counsel. His testimony established that he was at the Work Release Center; he went to work; on May 25, 2003, he went to see his son after work; he was with a female; he was drinking and he just fell asleep; and he did not make any effort to return to the Work Release Center between May 25, 2003 and June 11, 2003, when he was picked up. The fact Ms. Dunn did not want him to testify was effective representation. In any case, her desires became moot when he testified. Her desires did not cause him any prejudice. This claim fails.

12) Trial counsel was ineffective for not telling him about meetings in chambers and not including him in those meetings

An incarcerated defendant never is allowed into Chambers. Defendant could not appear at any such meetings. Furthermore, trial counsel informed him of what occurred at those meetings. Even if trial counsel was ineffective, defendant has failed to show any prejudice. This claim fails.

13) Trial counsel was ineffective for failing to object to statements that knowledge was a part of the escape charge

As the Supreme Court ruled, knowledge is an element of the case. *Gibbs v. State, supra* at 6. Trial counsel was not ineffective. This claim fails.

14) Trial counsel failed to assist him on appeal

Due to defendant's own choosing, trial counsel was made to be standby counsel since defendant was adamant he could represent himself. Trial counsel's letters attached to her affidavit establish she provided aid to defendant. In any case, defendant has failed to specify what research she failed to provide him and how the outcome of the appeal would have been different if she had supplied that research. This claim fails for vagueness. *Younger v. State, supra.*

For the foregoing reasons, defendant's claims of ineffective assistance of counsel fail.

Defendant's final argument is that the Superior Court lacked jurisdiction over the case because there was no presentment to the Grand Jury. I will consider this claim because it fits within the exception to the procedural bars. Super. Ct.Crim. R. 61(i)(5). A prosecution may proceed by information if a defendant waives proceeding by indictment. Super. Ct.Crim. R. 7. In this case, he so waived. Docket Entry 3. This claim is meritless.

***10** For the forgoing reasons, the Court denies each of the pending motions defendant has filed.

IT IS SO ORDERED.

Del.Super.,2006.
State v. Gibbs
Not Reported in A.2d, 2006 WL 1149161 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H
Gibbs v. State
Del.Supr.,2006.
(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
Edward GIBBS, Defendant Below, Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
**No. 203, 2006.**

Submitted: Sept. 7, 2006.
Decided: Nov. 30, 2006.
Rehearing En Banc Denied Jan. 5, 2007.

Court Below-Superior Court of the State of Delaware, in and for Sussex County in S03-06-0519I. Cr. ID No. 0305016899.

Before BERGER, JACOBS and RIDGELY, Justices.

ORDER

JACK B. JACOBS, Justice.
*1 This 30th day of November 2006, upon consideration of the appellant's opening brief and appendix, the State's motion to affirm and the Superior Court record, it appears to the Court that:

(1) The appellant, Edward Gibbs, filed an appeal from the Superior Court's denial of his motion for postconviction relief pursuant to Superior Court Criminal Rule 61("Rule 61"). The appellee, State of Delaware, has moved to affirm the judgment of the Superior Court on the ground that it is manifest on the face of Gibbs' opening brief that the appeal is without merit. We agree and affirm.

(2) In October 2003, a Superior Court jury convicted Gibbs of Escape after Conviction. At his sentencing in December 2003, Gibbs moved to dismiss his counsel as incompetent. The Superior Court denied the motion but, after conducting the requisite colloquy, allowed Gibbs to proceed pro se. The Superior Court declared Gibbs a habitual offender and sentenced him to twenty years at Level V with credit for time served, followed by six months at Level IV work release.

(3) In his pro se direct appeal, Gibbs alleged that (i) his conviction by an all-white jury deprived him of a fair trial; (ii) he was entitled to a jury instruction on a lesser-included offense; (iii) the Superior Court erred when instructing the jury; (iv) there was insufficient evidence to support his conviction; (v) the sentence imposed violated the Eighth Amendment; (vi) his due process rights were violated; and (vii) his defense counsel was ineffective. In his ineffective assistance of counsel claim, Gibbs reiterated the allegations of incompetence that he had previously raised in his motion to dismiss counsel as well as new allegations.

(4) By order dated February 4, 2005, this Court affirmed the Superior Court's judgment as to all of Gibbs' claims except for his claim of ineffective assistance of counsel.[FN1] The Court deferred consideration of the ineffective counsel claim to give Gibbs an opportunity to raise the allegations in their entirety in the Superior Court, and the Superior Court to rule on them after developing an appropriate record.[FN2]

FN1. *Gibbs v. State,* 2005 WL 535011 (Del.Supr.).

FN2. *Id.* ¶ 20.

(5) On August 11, 2005, Gibbs filed a motion for postconviction relief and separate motions for the appointment of counsel, an evidentiary hearing, and recusal of the trial judge. Among other claims, Gibbs alleged that his defense counsel was ineffective, the Superior Court lacked jurisdiction to try him, and the Superior Court failed to inquire into his conflict with his defense counsel.

(6) The Superior Court directed that Gibbs' defense counsel ("his counsel") file an affidavit in response to the allegations of ineffectiveness. His counsel filed a lengthy affidavit opposing the allegations. By order dated March 29, 2006, the Superior Court denied Gibbs' motion for postconviction relief.[FN3] This appeal followed.

FN3. *State v. Gibbs,* 2006 WL 1149161

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex. C.

(Del.Super.Ct.)

(7) On appeal Gibbs argues some but not all of the claims that he raised in his postconviction motion. To the extent Gibbs has not briefed claims that he raised on postconviction relief, those claims on appeal are deemed waived and abandoned.[FN4]

FN4. *Somerville v. State*, 703 A.2d 629, 631 (Del.1997).

*2 (8) In a claim that he raised, but on which the Superior Court declined to rule, Gibbs argues that this Court erred when deferring consideration of his ineffective assistance of counsel claim on direct appeal. The Court concludes that Gibbs' claim is without merit.[FN5]

FN5. *See* *Johnson v. State*, 765 A.2d 926, 929 (Del.2000) (deferring consideration of plain error claims on direct appeal and remanding to Superior Court to rule in the first instance on postconviction motion); *Shockley v. State*, 2006 WL 1277809 (Del.Supr.) (declining consideration of postconviction claims that were neither raised nor ruled upon in the Superior Court).

(9) When reviewing the Superior Court's denial of a postconviction motion pursuant to Rule 61, this Court first must consider the procedural requirements of the rule before addressing any substantive issues.[FN6] Rule 61(i)(3) bars from consideration any ground for relief that was not raised in the proceedings leading to the conviction unless the petitioner can establish (i) cause for failing to timely raise the claim and (ii) actual prejudice.[FN7] Rule 61(i)(5) provides in part that the procedural bar of Rule 61(i)(3) shall not apply to a jurisdictional claim.[FN8]

FN6. *Younger v. State*, 580 A.2d 552, 554 (Del.1990).

FN7. Del.Super. Ct.Crim. R. 61(i)(3) (2006).

FN8. Del.Super. Ct.Crim. R. 61(i)(5) (2006).

(10) Gibbs argues on appeal that the Superior Court lacked jurisdiction to try him because of an invalid waiver of preliminary hearing. The record reflects, however, that Gibbs waived his preliminary hearing and was properly charged by information.[FN9] Gibbs' jurisdictional claim is barred pursuant to Rule 61(i)(3), as he has provided no basis under Rule 61(i)(5) to excuse the procedural default.

FN9. *See* Del.Super. Ct.Crim. R. 7(b) (2006) (providing that an offense may be prosecuted by information if the defendant waives prosecution by indictment).

(11) Gibbs argues on appeal that the Superior Court failed to inquire into the conflict with his counsel. The sentencing transcript reflects, however, that the Superior Court thoroughly considered Gibbs' conflict with his counsel. Gibbs' claim to the contrary is barred pursuant to Rule 61(i)(3), as he has not demonstrated a basis under Rule 61(i)(5) upon which to excuse the procedural default.

(12) Gibbs argues on appeal that his counsel was ineffective. To prevail on a claim of ineffective assistance of counsel, Gibbs must show that (i) his counsel's representation fell below an objective standard of reasonableness, and (ii) the deficiencies in his counsel's representation caused actual prejudice.[FN10]

FN10. *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

(13) The Court has carefully considered Gibbs' allegations ineffective counsel in conjunction with the record. The record supports the Superior Court's findings that his counsel's performance was reasonable and/or that Gibbs did not demonstrate that alleged error on the part of his counsel was prejudicial to his case.

(14) We find it manifest on the face of the opening brief that the judgment of the Superior Court should be affirmed. The issues on appeal are controlled by settled Delaware law. To the extent that judicial discretion is implicated, there was no abuse of discretion.

NOW, THEREFORE, IT IS HEREBY ORDERED

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

918 A.2d 338
918 A.2d 338, 2006 WL 3455097 (Del.Supr.)
**(Cite as: 918 A.2d 338)**

Page 3

that the motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED.

Del.Supr.,2006.
Gibbs v. State
918 A.2d 338, 2006 WL 3455097 (Del.Supr.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 956655 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

H
Gibbs v. Carroll
D.Del.,2006.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Edward GIBBS, Petitioner,
v.
Thomas L. CARROLL, Warden, Respondent.
**No. Civ.A. 05-750-JJF.**

April 12, 2006.

Edward Gibbs, Petitioner, pro se.
Thomas E. Brown, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware, for Respondent.

*MEMORANDUM OPINION*

FARNAN, J.
*1 Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Edward Gibbs. (D.I.1.) For the reasons discussed, the Court will dismiss the Petition without prejudice for failure to exhaust state remedies.

I. FACTUAL AND PROCEDURAL BACKGROUND

In March 2003, Petitioner arrived at the Sussex Work Release Center ("SWRC") in Georgetown, Delaware, to begin serving the Level IV work release portion of a sentence imposed for a violation of probation. Following a one-week orientation program, Petitioner obtained employment at a chicken house in Laurel, Delaware, and then at the Sussex Pines Country Club in Georgetown, Delaware. On May 25, 2003, Petitioner did not return to the SWRC from his job at the country club, and a warrant was issued for his arrest. Petitioner was apprehended on June 11, 2003 in Georgetown. Gibbs v. State, 872 A.2d 959 (Table), 2005 WL 535011, at * *1(Del. Feb. 4, 2005).

On June 12, 2003, Petitioner was charged with violating the terms of his probation. Although a hearing was scheduled, it was continued. On July 18, 2003, Petitioner was charged with escape after conviction, and a jury trial was held on that charge in October 2003. At trial, Petitioner testified that he had not made any effort to contact the SWRC between May 25, 2003, the date he failed to return to the facility, and June 11, 2003, the date on which he was apprehended. The jury convicted Petitioner on the escape charge. Gibbs, 2005 WL at * *1 n. 2.

During sentencing, Petitioner moved to dismiss his trial counsel. After a thorough colloquy, the Superior Court permitted Petitioner to proceed *pro se* for the remainder of the proceeding, and directed his trial counsel to serve as standby counsel. The Superior Court also considered the corresponding violation of probation charge, found Petitioner guilty of violating his probation, and sentenced him to one year and nine months in prison, suspended for two years of probation. For the escape conviction, the Superior Court sentenced Petitioner as an habitual offender to twenty years in prison with credit for time served, to be followed by six months at Level IV work release. Gibbs, 2005 WL 535011, at ¶¶ 7-9. Petitioner appealed, and the Delaware Supreme Court affirmed his conviction and sentences.

On August 11, 2005, Petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). As of March 21, 2006, the motion was still pending in the Superior Court. (D.I. 13, Del.Super. Ct.Crim. Dkt. in *State v. Gibbs,* Crim. A. No. S03060519R1.)

On October 24, 2005, Petitioner filed the instant Petition. (D.I.1.) Respondent filed an Answer, contending that the Petition should be dismissed without prejudice for failure to exhaust state remedies. (D.I.11.)

II. GOVERNING LEGAL PRINCIPLES

A district court can entertain a state prisoner's application for federal habeas relief only on the ground that his custody violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Absent exceptional circumstances, a federal court cannot review a habeas petition on the merits unless the petitioner has exhausted his remedies under state law. 28

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex. D

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 956655 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). A petitioner satisfies the exhaustion requirement by presenting his claim to the state's highest court, either on direct appeal or in a post-conviction proceeding. *O'Sullivan*, 526 U.S. at 844-45; *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir.1997). Generally, a federal court will dismiss without prejudice an unexhausted claim in order to give a petitioner an opportunity to present the unexhausted claim to the state courts. *Lines v. Larkins*, 208 F.3d 153, 159-60 (3d Cir.2000).

III. DISCUSSION

*2 Petitioner asserts four claims in his Petition: (1) the Superior Court lacked jurisdiction over his criminal proceeding because there was no grand jury indictment; (2) the trial judge abused his discretion by failing to inquire about an undisclosed conflict; (3) trial counsel provided ineffective assistance by failing to subpoena unspecified witnesses; and (4) the Delaware Supreme Court erred by not ruling on Petitioner's ineffective assistance of counsel claims in the direct appeal.

After reviewing the parties' submissions, the Court concludes that Petitioner has not yet exhausted state remedies for any of his claims. Claims One, Two, and Four were not presented to the Delaware Supreme Court on direct appeal. Although Petitioner presented Claim Three (ineffective assistance of counsel) on direct appeal, that presentation did not exhaust state remedies; in Delaware, an ineffective assistance claim must first be raised in a Rule 61 motion to the Superior Court. *See Castille v. Peoples*, 489 U .S. 346, 351 (1989)(holding that a petitioner does not exhaust state remedies by presenting a claim to the state courts in an improper procedural fashion); *Kendall v. Attorney General of Delaware*, 2002 WL 531221, at *4 n. 2 (D.Del. Mar. 26, 2002) (explaining that, in Delaware, an ineffective assistance of counsel claim must first be raised in a post-conviction motion pursuant to Superior Court Criminal Rule 61). Further, even though Petitioner has raised all four claims in a Rule 61 motion, (D.I. 1, at ¶ 18.), the Superior Court has not yet decided that motion. Therefore, the claims will not be exhausted until the completion of the state post-conviction review process. *See Evans v. Court of Common Pleas*, 959 F.2d 1227, 1234 (3d Cir.1992)(explaining general rule that federal habeas review is unavailable until state criminal proceeding is completed); *Ross v. Carroll*, 2002 WL 31230810 (D.Del. Sept. 23, 2002).

Finally, the Court will deny Petitioner's request to stay the instant habeas proceeding until the Superior Court renders an opinion on his Rule 61 motion. (D.I. 1, at ¶ 18.) A stay is only warranted when a petitioner has presented a petition containing exhausted and unexhausted claims, and his ability to file a timely habeas petition after the proper exhaustion would be foreclosed under the one-year limitations period established in 28 U.S.C. § 2244. *See Rhines v. Weber*, 544 U.S. 269 2005); *Crews v. Horn*, 360 F.3d 146 (3d Cir.2004). Here, Petitioner has presented a Petition containing only unexhausted claims, and he will not be foreclosed from filing a timely habeas petition after he exhausts state remedies.

Accordingly, the Court will dismiss the Petition without prejudice for failure to exhaust state remedies.

IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

*3 The Court has concluded that the Petition must be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 956655 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

dismissed without prejudice for failure to exhaust state remedies. The Court is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the Court declines to issue a certificate of appealability.

V. CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 will be denied without prejudice.

An appropriate Order will be entered.

*ORDER*

At Wilmington, this *12* day of April, 2006, for the reasons set forth in the Memorandum Opinion issued this date;
IT IS HEREBY ORDERED that:

1. Petitioner Edward Gibbs' Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 (D.I.1) is *DISMISSED WITHOUT PREJUDICE.*

2. The Court declines to issue a certificate of appealability, because Petitioner has failed to satisfy the standards set forth in 28 U.S.C. § 2253(c)(2).

D.Del.,2006.
Gibbs v. Carroll
Not Reported in F.Supp.2d, 2006 WL 956655 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H
Holden v. State
Del.Supr.,1998.
(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')

Supreme Court of Delaware.
Joseph Lee HOLDEN, Defendant Below, Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
**No. 414, 1997.**

Submitted May 7, 1998.
Decided May 12, 1998.

Court Below: Superior Court of the State of Delaware in and for Sussex County, Cr.A. No. S95-08-0680.

Before WALSH, HOLLAND, and BERGER, Justices.

ORDER

WALSH, Justice.
*1 This 12th day of May, 1998, upon consideration of the briefs of the parties, we conclude that this appeal should be affirmed on the basis of, and for the reasons set forth in, the well reasoned decision of the Superior Court dated August 14, 1997.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be, and the same hereby is,

AFFIRMED.

Del.Supr.,1998.
Holden v. State
710 A.2d 218, 1998 WL 280356 (Del.Supr.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex. E

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 1997 WL 716907 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 1

H
Holden v. State
Del.Super.,1997.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware.
Joseph Lee HOLDEN
v.
STATE of Delaware
Kevin V. BORDLEY
v.
STATE of Delaware
Benjamin CHARLESTON
v.
STATE of Delaware

**No. CRIM.A.95-08-0680 R1, 9508020068, CRIM.A.96-05-0096 R1, 9605000739, CRIM.A.96-02-0391 R1, CRIM.A.96-02-0389 R1, 9601015702.**

Aug. 14, 1997.

Joseph Lee Holden, Sussex Correctional Institution, Georgetown, DE.
Kevin V. Bordley, Sussex Correctional Institution, Georgetown, DE.
Benjamin Charleston, Sussex Correctional Institution, Georgetown, DE.
GRAVES, J.
*1 Gentlemen:

Joseph Lee Holden, Kevin V. Bordley and Benjamin Charleston (hereinafter "the defendants") have each filed motions for postconviction relief pursuant to Superior Court Criminal Rule 61. Because the motions are essentially identical, the Court has chosen to issue a single decision to all of the defendants.

Each of the defendants pled guilty to escape after conviction. 11 *Del.C.* § 1253 states as follows:

A person shall be guilty of escape after conviction if such person, after entering a plea of guilty or having been convicted by the court, escapes from a detention facility or from the custody of the Department of Health and Social Services or the Department of Correction. (emphasis added.)

Each of the defendants have been sentenced and none filed an appeal to the Supreme Court.

Each of the defendants challenge the use of the escape after conviction statute to the common facts of their cases, i.e., not returning to the Work Release facility at the end of the defendant's work release pass. The essence of the defendants' argument is that they cannot be charged with escape after conviction and therefore, the charge was inappropriate, the indictment was defective and each of the defendants' attorney was ineffective for not raising this issue earlier. The defendants do not attack the constitutionality of the statute itself, but each of the defendants claim that it cannot be applied to the facts of their individual cases, which all happen to be the same, i.e., a charge of escape after conviction arising from the defendant's failure to return to the Work Release facility.

*Procedural Bars*

Before considering the merits of the defendants' position, the Court must first consider whether any procedural bars are applicable, and if so, the Court should apply the procedural bar and not consider the merits of the argument. *Younger v. State*, Del.Supr., 580 A.2d 552 (1990). Since the defendants are not attacking the constitutionality of the escape after conviction statute, but the application of that statute to their individual cases, it appears that this was an appropriate argument to assert in the proceedings in Superior Court prior to their respective entries of a guilty plea. As such, the claim is barred unless the movant can show cause for relief from the procedural default (i.e., why they did not assert the claim earlier) and prejudice from the violation of the movant's rights. Superior Court criminal Rule 61(i)(3). Movants do not address this procedural bar at all. That is perhaps due to their argument that it was ineffective assistance of counsel for their attorney to not have raised this issue, but to use ineffective assistance of counsel to justify "cause" for not asserting the claim earlier, the movants must establish that counsel was truly ineffective. In other words, a bold,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex. F.

Not Reported in A.2d
Not Reported in A.2d, 1997 WL 716907 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 2

conclusory claim that counsel was ineffective does not open the door for claimants to assert any and all claims that they feel their attorney should have made and thereby avoid the bar of Rule 61(i)(3).

***2** Realistically, what this means is that the Court must consider the merits of the argument in determining whether or not their attorney was ineffective.

To establish a claim of ineffective assistance of counsel, the movant must show (1) that their attorney's representation performance fell below an objective standard of reasonableness and (2) but for their attorney's unprofessional errors, the result of the trial would have been different or the defendant would not have pled guilty. *Strickland v. Washington*, 466 U.S. 668 (1984); *Albury v. State*, Del.Supr., 551 A.2d 53 (1988).

In *Smith v. State*, Del.Supr., 361 A.2d 237 (1976), the Supreme Court ruled that an unauthorized departure from the custody of Work Release constituted an escape. In order to constitute an escape after conviction, one did not have to be within the physical bounds of a prison or in the direct custody of a correctional officer. The failure to return to the Work Release facility at the expiration of a pass would constitute an escape.

The movants argue that *Smith v. State* should not be followed because in 1976 the State of Delaware did not have the Level 1 through 5 sentencing sanctions which were in place when they were sentenced. While it is true that the formalization of Level 1 through Level 5 sentencing options did not formally occur until 1987, that does not mean that *Smith v. State* in no longer good law. The holding of *Smith v. State* makes it clear that one can escape from the custody of the Department of Correction and thus this constitutes an escape after conviction when one fails to return to the Work Release facility after an authorized absence. "Custody" is defined in 11 *Del.C.* § 1258(2) to mean "restraint by a public servant pursuant to an arrest, detention or an order of a Court." "Escape" is defined in 11 *Del.C.* § 1258(4) to mean "departure from the place in which the actor is held or detained with knowledge that such departure is unpermitted."

The work release statute make it clear that an inmate, when released from the formal confines of the Work Release facility, continues to be in the "custody" of the Department of Correction. In particular, 11 *Del.C.* § 6533(b) provides:

Any inmate employed under subsection (a) of this section shall continue to be in the legal custody of the Department, not withstanding the inmate's absence from an institution by reason of such employment and any employer of any such person shall be considered the representative of, or keeper for, the Department.

The statutory scheme makes it clear that when an inmate is released into the community, under a furlough or supervised custody program, he continues to be in the legal custody of the Department. See 11 *Del.C.* § 6539(d).

The logic in the holding of *Smith v. State* continues to be viable. The statutes support the *Smith v. State* holding. The defendants, "having pled guilty and thus been convicted" were afforded the benefit of the Work Release program at Supervision Level 4. While at Level 4, they were afforded the privilege of temporary release from that facility knowing full well that it was a temporary release and that their departure from the Work Release facility was conditioned upon their return. When the inmate does not voluntarily return to the Work Release facility, then it is deemed that the inmate has escaped from the "custody" of the Department of Correction and an escape charge is appropriate.

***3** It is unnecessary to consider the defendants' argument concerning the treatment of persons on Home Confinement because none of the persons above were charged with escape arising out of Home Confinement. The Court will stick to the facts of these cases.

In summary, the Court finds that escape after conviction is an appropriate charge for a person who makes an unauthorized departure from a Level 4 Work Release facility.

IT IS SO ORDERED.

Del.Super.,1997.
Holden v. State

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1997 WL 716907 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 3

Not Reported in A.2d, 1997 WL 716907 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1728290 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

H

Holden v. Kearney
D.Del.,2000.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Joseph Lee HOLDEN, Plaintiff,
v.
Rick KEARNEY, Warden, and M. Jane Brady, Respondents.
**No. CIV.A. 98-325-GMS.**

March 29, 2000.

Joseph Lee Holden, SCI, Georgetown, Pro se.
Loren C. Meyers, Department of Justice, State of Delaware, Wilmington, for Rick Kearney, Warden, Attorney General of the State of Delaware, respondents.

MEMORANDUM AND ORDER

SLEET, District J.

*1 Joseph Lee Holden is presently serving an eight-year prison sentence at the Sussex Correctional Institute ("SCI") after having been convicted of escape in August of 1997. On May 20, 1998, Holden filed a petition for a writ of habeas corpus with this court. In it, he raises essentially two grounds for relief. After reviewing these claims in light of the governing law, the court concludes that they fail on the merits. For this reason, Holden's petition will be dismissed.

I. BACKGROUND.

In 1994, Holden was a participant in the SCI work release program. On December 18, 1994, he failed to return at the time designated in his pass. As a consequence, the authorities immediately issued an arrest warrant which charged Holden with escape after conviction. *See* Del.Code Ann. tit. 11, § 1253 (1999). Approximately nine months later, he was taken into custody. The following month, the State Attorney General's office formally charged Holden with escape by way of information. On December 6, 1995, Holden pled guilty to this crime. At sentencing, he was declared an habitual criminal and sentenced to eight years of imprisonment.

On July 9, 1997, Holden filed a motion for post-conviction relief in the Superior Court, which was denied. *See* *Holden v. State,* 1997 WL 716907, at *2-3 (Del.Super.Ct. Aug. 14, 1997) (*Holden I* ). The Delaware Supreme Court affirmed, adopting the lower court's decision as its own. *See* *Holden v. State,* 1998 WL 280356, at *1 (Del. May 12, 1998) (*Holden II* ).

In his post-conviction proceedings, Holden raised the same issues that he has brought in this federal action. Specifically, he claimed that: (1) because the literal language of the governing state statute did not reach inmates on work release, he could not have been charged with or convicted of escape; and (2) he pled guilty to the charge of escape out of frustration with his ineffective attorney who not only failed to research and raise important legal issues in his case but also failed to file any pre-trial motions.

The state court rejected these arguments, and this court will do the same. Holden bases his first claim on a question of state law. As a result, this court cannot afford him the relief which he requests. In addition, because an attorney need not raise frivolous arguments before the courts, Holden has also failed to demonstrate that his counsel's conduct was objectively unreasonable. Therefore, the court will dismiss Holden's petition and deny him the relief which he requests.

II. DISCUSSION.

Although Holden exhausted his state court remedies when he appealed the Superior Court's ruling to the Delaware Supreme Court, his first claim raises an issue of state, not federal, law which cannot serve as the basis for relief in a federal habeas proceedings. *See* *Estelle v. McGuire,* 502 U.S 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to re-examine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *see also* *Hull v. Kyler,* 190 F.3d 88, 101 n. 4 (3d Cir.1999) ("When comity compels us to leave

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex G.

adjudication of an issue to a state court, it likewise requires us to respect that court's determination of the issue, despite the losing party's claim that the determination was contrary to state law."); *cf.* Wells v. Pestock, 941 F.2d 253, 256 (3d Cir.1991) ("[R]eview of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights. We can take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implement a federal constitutional guarantee.").

***2** In particular, Holden contends that, interpreted literally, the state statute setting forth the crime of escape does not apply to individuals sentenced to work release. *See* Del.Code Ann. tit. 11, § 1253 (stating that "[a] person shall be guilty of escape after conviction if such person, after entering a plea of guilty or having been convicted by the court, escapes from a detention facility or from the custody of ... the Department of Corrections."). The Superior Court rejected this argument, noting that, in light of established state precedent, "[t]he failure to return to the work release facility at the expiration of a pass ... constitute[s] escape." *See* Holden I, 1997 WL 716907, at *2 (citing Smith v. State, 361 A.2d 237, 238-39 (Del.1976)); *see also* Del.Code Ann. tit. 11, § 1258 (defining "custody" as "restraint by a public servant pursuant to an arrest, detention, or order of a court").

In affirming this ruling, the Delaware Supreme Court adopted the holding as its own. *See* Holden II, 1998 WL 280356, at *1. Because the Delaware Supreme Court is the final arbitrator on the meaning of Delaware law, Holden's argument that Section 1253 does not apply to individuals sentenced to work release is, by definition, untenable. *See, e.g.,* Reeves v. Hopkins, 76 F.3d 1424, 1427 (8th Cir.1996) (relying on Estelle, 502 U.S. at 67-68). Furthermore, even if this court could conclude that the Delaware Supreme Court somehow managed to misinterpret the State's own laws, this type of argument fails to present a ground for federal habeas relief. *See* Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir.1997) ("[E]ven if the state courts made a mistake of state law which prejudiced [the petitioner] by altering the proofs necessary to support a conviction, to obtain habeas corpus relief, he must demonstrate that the mistake deprived him of a right which he enjoyed under the Constitution, laws, or treaties of the United States."); Bates v. McCaughtry, 934 F.2d 99, 102 (7th Cir.1991) ("A claim that the state court misunderstood the substantive requirements of state law does not present a claim under [Section] 2254 [because 'a] federal court may not issue the writ on the basis of a perceived error of state law." ') (quoting Pulley v. Harris, 465 U.S. 37, 41 (1984)); *see also* Garner v. Louisiana, 368 U.S. 157, 166 (1961) ("We of course are bound by a State's interpretation of its own statute and will not substitute our judgment for that of the State's when it becomes necessary to analyze the evidence for the purpose of determining whether that evidence supports the findings of a state court.") (cited in Bates, 934 F.2d at 102).

Although Holden attempts to avoid this conclusion by framing his claim as one for the violation of his due process rights, he cannot simply "re-package" a possible error of state law in this manner in order to sneak it in through the back door of the federal courts. *See* Johnson, 117 F.3d at 110; Bates, 934 F.2d at 102; *see also* Carson v. Director of Iowa Dep't of Corrections Servs., 150 F.3d 973, 975 (8th Cir.1998) (citing *Johnson* ). Moreover, the Delaware Supreme Court's conclusion that Section 1253 applies not only to incarcerated prisoners but also to individuals on work release is consistent with at least one federal decision and a number of state court rulings. *See* United States v. Jones, 569 F.2d 499, 501 (1978); *see also* Westmark v. Wyoming, 864 P.2d 1031, 1032 (Wyo.1993); Craigo v. Legursky, 398 S.E.2d 160, 161-62 (W.Va.1990); *cf.* Ronnfeldt v. Iowa Dist. Court for Jones County, 601 N.W.2d 357, 359 (Iowa 1999). In light of *Jones,* this court cannot conclude that Delaware Supreme Court's decision was either contrary to, or involved an unreasonable application of, federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(b)(1) (1994).

***3** While Holden also claims that he was denied equal protection of the laws because the state prosecutors charged him with escape instead of simply treating his absence as a violation of the conditions of his sentence, there is no constitutional right which requires the prosecution to pursue only the lowest pos-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1728290 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

sible charges against the accused. *See* United States v. Batchelder, 442 U.S. 114, 123-24 (1979). Nor is there any evidence, let alone even an allegation, that Holden was the victim of selective prosecution because of his race, gender, religion, or some other impermissible factor. *Cf.* United States v. Armstrong, 517 U.S. 456, 464-65 (1996) (requiring the defendant to present "clear evidence" that the prosecutor violated the constitutional guarantee of equal protection).

Finally, although Holden claims that he pled guilty to the crime of escape out of frustration with his attorney's ineffectiveness, the court fails to see how defense counsel's alleged errors undermine the reliability of Holden's conviction. *Cf.* Lockhart v. Fretwell, 506 U.S. 364, 369 (1993) (asking whether "counsel's errors were so serious as to deprive the defendant of a fair trial ... whose result is reliable") (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). Under the governing legal standard, Holden must not only show that his attorney's conduct fell below an objective standard of reasonableness but also demonstrate that there is a reasonable probability that, but for these errors, he would have chosen to proceed to trial. *See* Hill v. Lockhart, 474 U.S. 52, 58-89 (1985) (citing, *inter alia,* Strickland, 466 U.S. at 693-94).

Holden attempts to make these showings by contending that, during the underlying criminal proceedings, his attorney should have researched and argued the primary legal issue which has been raised in this action-specifically, that Section 1253 does not apply to individuals on work release. However, even if his attorney had made this argument, it would have been rejected by the Delaware Supreme Court (as its ruling demonstrates). *See Holden II, supra,* at *1 (affirming *Holden I* and adopting the Superior Court's decision as its own). In fact, because the Delaware Supreme Court had rejected this very argument as early as 1976 (nearly twenty years before Holden was even charged under Section 1253), *see* Smith, 361 A.2d at 238-39 (cited in *Holden I* ), this court cannot conclude that it was objectively unreasonable for defense counsel to refrain from raising this issue in Holden's case. *Cf.* Norris v. Schotten, 146 F.3d 314, 336 (6th Cir.1998) ("[C]ounsel cannot be deemed ineffective for failing to raise frivolous claims."); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir.1994) ("[T]he failure to raise non-meritorious issues does not constitute ineffective assistance.").

Because Holden has not identified any other errors by his attorney or demonstrated how these errors might have led him to plead guilty, the court cannot conclude that but for counsel's actions, there is a reasonable probability that Holden would have proceeded to trial. In short, this is not a case where an attorney failed to conduct a proper investigation into his client's defense and, thus, may have overlooked exculpatory information. *See, e.g.,* Berryman v. Morton, 100 F.3d 1089, 1000-01 (3d Cir.1996). Nor is this a case where the attorney overrode the will or desire of his client by effectively forcing him to plead guilty through the use of threats. *See, e.g.,* given. Ryan v. Louisiana, 418 F.2d 560, 561 (5th Cir.1969). Instead, this is a case where the petitioner claims that his attorney was ineffective because he failed to raise a legal argument which the Delaware Supreme Court had previously rejected. As discussed earlier, this is not a sufficient ground for federal habeas relief because counsel cannot be ineffective for failing to raise frivolous or otherwise non-meritorious claims. *See* Norris, 146 F.3d at 336; Bolender, 16 F.3d at 1573.

III. CONCLUSION.

*4 Because Holden's first claim raises only an issue of state law, this court cannot afford him the relief which he requests. Furthermore, because it does not appear that his attorney was ineffective, Holden cannot obtain relief on his second claim. For these reasons, IT IS HEREBY ORDERED that:

1. The Petition for a Writ of Habeas Corpus is DISMISSED; and
2. The relief which the Petitioner requests is DENIED.

D.Del.,2000.
Holden v. Kearney
Not Reported in F.Supp.2d, 2000 WL 1728290 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d Page 1
Not Reported in A.2d, 1995 WL 656783 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

**H**

In re Motion for Postconviction Relief, Def. ID#92S05488DI
Del.Super.,1995.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware.
In re MOTION FOR POSTCONVICTION RELIEF DEF. ID#92S05488DI.
**Crim. A. Nos. 92-12-0044R1, 92-12-0045R1.**

Oct. 11, 1995.

GRAVES, Judge.

*1 Before the Court is the defendant's postconviction application pursuant to Superior Court Criminal Rule 61 ("Rule 61"). The defendant alleges sixteen grounds as a basis for relief.

*Procedural Bars*

The Court must determine if there are any procedural bars before examining the merits of each allegation. *Younger v. State*, Del. Supr., 580 A.2d 552 (1990). Due to the number of allegations, I shall address any applicable procedural bar in connection with each specific allegation.

*Factual Background*

A detailed review of the facts in this case may be found in the Supreme Court order affirming the defendant's conviction. *Miller v. State of Delaware*, Del. Supr., No. 236, 1994, Harnett, J. (May 9, 1995)(ORDER). Only a nutshell review of the facts is necessary for this decision.

On November 29, 1992, a Thanksgiving dinner was delivered to a resident of Huling Cove located in Lewes, Delaware. Huling Cove is a senior citizen residential community. When the volunteer attempted to deliver the meal, she heard noises coming from the apartment. When the volunteer knocked on the door, the defendant partially opened the door and stated that "his grandmother" did not want any dinner. This aroused the volunteer's curiosity, because the volunteer knew the resident was white and the defendant is black. Also, the volunteer had communicated earlier with the resident and was aware the resident was expecting the dinner. The volunteer unsuccessfully attempted to enter the apartment, but the volunteer did hear the resident calling for help. The police were summoned and they found the defendant lying on top of the victim. The victim's clothes had been lifted above her waist. At the hospital, the victim told the emergency room staff that the defendant had gained entrance by claiming to be a relative of the person that cared for her, that he refused to leave her apartment and that he had raped her. That day the defendant was arrested and charged with unlawful sexual intercourse in the first degree and related charges.

On June 14, 1993, the defendant entered a Robinson plea to second degree unlawful sexual intercourse. On July 16, 1993, he was sentenced to a period of incarceration of twenty years. Subsequently, the defendant filed a motion for postconviction relief which was granted, and the defendant was allowed to withdraw his guilty plea and proceed to trial on all charges. Following a jury trial, the defendant was convicted on May 23, 1994 of unlawful sexual intercourse in the first degree and burglary in the second degree. The defendant was sentenced to a period of life imprisonment as to the sex offense and a period of eight years as to the burglary. Following the defendant's unsuccessful appeal, he filed the present motion with the Court.

*Ground One.*

*"Not Signing or Waived Indictment"*

There are no procedural bars. The defendant's claim alleges a lack of jurisdiction due to the failure of his case to be prosecuted by way of indictment.

*2 The defendant was prosecuted by an information the Department of Justice filed on December 28, 1992. On January 8, 1993, a written arraignment, pleading not guilty, was filed pursuant to Rule 10(c). Mr. Miller and his attorney executed this by written pleading. A review of the Court's docket reveals that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex. H.

Not Reported in A.2d
Not Reported in A.2d, 1995 WL 656783 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 2

an executed waiver of indictment was not filed with the information. The Court should have picked up this error because Superior Court Criminal Rule 7(b) requires that a felony crime be prosecuted by indictment unless the defendant has waived indictment in open Court or in writing. The issue: did Superior Court have jurisdiction to try and subsequently sentence the defendant? For the reasons stated below, I find that, by the defendant's conduct, there was a de facto waiver of his right to be indicted and that the defect in the record should not result in this defendant having another trial.

*Applicable Rule*

A criminal "offense within the exclusive jurisdiction of Superior Court other than a capital crime" must be prosecuted by indictment unless the indictment is waived and proceeds by information. Super. Ct. Crim. R. 7(a). The defendant may waive indictment and proceed by information after he or she has been advised of the nature of the charge and of his or her rights. Super. Ct. Crim. R. 7(b). Under the Delaware Superior Court Criminal Rules, the defendant may waive prosecution by indictment in writing or in open Court. Super. Ct. Crim. R. 7(b).

Pursuant to rule 61(g)(1), the record has been expanded. Pursuant to that Rule, the Court directed the Department of Justice, the Public Defender's Office and the contract attorney to review their files to determine if the defendant had executed any document evidencing his waiver of indictment in order to proceed by way of information. Additionally, the Court made inquiry as to what occurred at the defendant's preliminary hearing in the Court of Common Pleas.

On June 16, 1995, the contract attorney forwarded to the Court the original of a document the defendant executed while under the representation of the Public Defender's Office. It is dated December 3, 1992, which was the date of the defendant's preliminary hearing. The document states the following: "This will confirm that I waive my preliminary hearing in the Court of Common Pleas for a copy of the police report and further, I agree that the State can proceed in Superior Court by the filing of informations in lieu of presenting it to the Grand Jury for indictment." At the signature line for the defendant, there is the name of Richard Thomas Miller. On June 29, 1995, the Court forwarded a copy of this document to the defendant.

I note that the Court of Common Pleas records, and a transcript of the proceedings below evidences, that the defendant, through his attorney, waived his preliminary hearing. This is consistent with the aforementioned document and is consistent with the custom and practice of obtaining copies of police reports by waiving preliminary hearing and proceeding by way of information in lieu of indictment. Police reports are not normally discoverable under Rule 16.

*3 On September 19, 1995, the Court held an evidentiary hearing to determine: (1) if the defendant executed the aforementioned waiver; (2) was the preliminary hearing and indictment, in fact, waived for the police reports; and (3) did the defense receive the reports pursuant to the waiver. At the September 19, 1995 hearing, the December 3, 1992 waiver document was introduced. The public defender investigator specifically recalled meeting with Mr. Miller and reviewing with him the aforementioned waiver document. Additionally, two identical waiver documents involving prior offenses were introduced from the public defender's file. The defendant acknowledged having read the earlier waiver documents and having signed them. One of these prior offenses ultimately was prosecuted by information in the Superior Court and the defendant pled guilty to a burglary. The public defender's staff and attorneys testified they always review the consequences of the waiver of preliminary hearing and grand jury indictment with each defendant before advising the Court of Common Pleas of a waiver. Even though the defendant questions whether or not he executed the waiver document dated December 3, 1992, I am satisfied he did based upon the investigator's testimony, the defendant's acknowledgement that it looks like his signature, and my comparison of the other documents containing the defendant's signature to the waiver document in question.

Subsequent to the filing of the charging document, the information, the defendant (i) filed a written arraignment entering a plea of not guilty and requesting

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1995 WL 656783 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 3

a jury trial; (ii) entered a plea of guilty and withdrew same for reasons other than jurisdiction; (iii) went to trial and was convicted; and (iv) appealed his conviction.

It is apparent that Mr. Miller, his public defender, his contract attorney, the Department of Justice and the Court operated under the assumption that a waiver of indictment had been filed.

I am satisfied that the records of the Court of Common Pleas, the executed December 3, 1992 waiver document, and the testimony of his then assigned attorneys establish that the defendant waived his right to a preliminary hearing and Grand Jury indictment in order to obtain a copy of the police report which would not have been obtainable to him through Rule 16 discovery. Because of that waiver, he obtained the police reports. Following same, the case was processed by his attorneys, the Department of Justice, the Court of Common Pleas and the Prothonotary with the understanding that the case would be tried by way of information. A written waiver document has now been produced and filed with the Court.

Based upon the defendant's earlier experience with the criminal justice system and his execution of documents waiving his right to grand jury indictment twice prior to the present case, I find that he knowingly, voluntarily and intelligently waived his right to grand jury indictment by the agreement he reached with the State to obtain copies of the police report. This occurred on December 3, 1992.

*4 The Superior Court's file now contains that document. While it is admittedly a tardy filing, it firmly establishes that this defendant knew of and agreed to prosecution by information.

I further find that the defendant acquiesced to the jurisdiction of this Court by participating in all phases of the prosecution from his Rule 10 arraignment through the filing of his appeal.

Under these facts and circumstances, I find that the defendant waived his right to be prosecuted by indictment and submitted himself to the jurisdiction of this Court. I find that the failure to obtain the express waiver was a technical violation which did not deprive the Court of jurisdiction. *Ornelas v. United States*, 11th Cir., 840 F.2d 890 (1988). Under these facts, the failure to formalize same should not be a ground for a new trial.

*Ground Two.*

*"Bail being raised for same offense"*

The defendant argues that his bond was raised following his initial postconviction proceedings.

This allegation is barred pursuant Rule 61(i)(3) in that the defendant has not provided any excuse as to why this matter was not asserted in the proceedings leading to his conviction, including the appeal, nor has he shown any prejudice arising from the alleged violation.

As to the merits, the defendant's bond had nothing to do with his conviction. Collateral matters not contributing to the conviction cannot provide relief from the conviction under Rule 61.

*Ground Three.*

*"I signed and requested a non-jury trial."*

The defendant alleges his rights were violated because he did not want a jury trial. He also argues bias and prejudice on the part of the jury.

Initially, the defendant was scheduled for a jury trial. Then the aforementioned events concerning the Robinson plea and the withdrawal of same occurred.

Later, when his case was scheduled for trial, the defendant indicated his desire to waive a jury trial. At first, the State agreed, but immediately changed its position upon learning that a Court trial would have resulted in a continuance of the case. Therefore, the Court did not approve waiver of jury trial. The defendant objected, but did not pursue this claim on appeal.

Additionally, although not clear, the defendant appears to be arguing that the jury panel was not properly balanced as to either elderly persons or black persons. This was not raised at trial or on appeal.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1995 WL 656783 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 4

Therefore, both of these grounds are procedurally barred pursuant to Rule 61(i)(3) in that the defendant has not shown any excuse for not asserting these allegations earlier (including appeal) nor has he shown any prejudice arising from the alleged violations. Finally, the defendant has shown no colorable claim that there was miscarriage of justice.

As to the merits, the defendant is not entitled to a trial by Court unless the defendant waives the jury trial in writing with the approval of the Court and the consent of the prosecutor. *See* Superior Court Criminal Rule 23(a). That did not occur and therefore, there is no merit in the argument.

*5 As to the allegations concerning the age or racial balance of the jury, the defendant provides nothing more than his conclusory claims. Likewise, it must be denied on the merits.

*Ground Four.*

*"Double Jeopardy."*

After the defendant entered a Robinson plea, he was sentenced. Later the defendant successfully attacked his plea and the plea was withdrawn. The matter was then set down for trial. Following trial, he was convicted and sentenced. The defendant claims the prohibition of double jeopardy requires that his sentence be vacated.

This ground is likewise procedurally barred under Rule 61(i)(3) for the same reasons aforestated.

As to the merits, it is obvious that when the plea was allowed to be withdrawn, the first sentence was vacated. The defendant has not been punished twice for the same offense. There is no merit in this claim.

*Ground Five.*

*"Being tried without witness present."*

The defendant does not allege the name of the witness but based upon the record, the Court presumes this allegation involves the victim of the sexual intercourse who died long before trial. At trial, certain hearsay statements were introduced over the objection of the defendant. The defendant pursued this claim on appeal, but did not prevail.

This ground is procedurally barred due to former adjudication under Rule 61(i)(4). There has been no showing by the defendant of any colorable claim that a miscarriage of justice has occurred.

*Ground Six.*

*"Disallowing refusing my witness to testify in front of jury."*

The defendant does not identify his witness, but from the record, the Court assumes it was the denial by the Court to permit certain hearsay evidence. This hearsay evidence was allegedly attributed to the victim and consisted of a comment to the defendant's counselor that she thought the original sentence arising from his plea was too long. The defendant desired to use this statement at trial to prove the victim was recanting. The Court did not admit this hearsay and the Supreme Court affirmed the ruling on appeal.

This ground is barred due to former adjudication under Rule 61(i)(4). There has been no showing by the defendant of any colorable claim or that a miscarriage of justice has occurred.

*Ground Seven.*

*"Motion to recuse."*

The defendant requested a recusal of the trial judge. The trial judge was the same judge that allowed him to withdraw the plea pursuant to the initial Rule 61 application. The trial judge did not recuse himself, and the Supreme Court upheld this decision.

This ground is barred due to former adjudication under Rule 61(i)(4). There has been no showing by the defendant of any colorable claim that a miscarriage of justice has occurred.

*Ground Eight.*

*"Malicious prosecution."*

The defendant makes conclusory allegations that the prosecutor solicited false testimony in order to convict him.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1995 WL 656783 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 5

This ground is procedurally barred in that the defendant never presented this issue to the trial court nor pursued it on appeal. Nor, under Rule 61(i)(3), has there been any attempt to show cause for relief or prejudice. There has been no showing by the defendant of any colorable claim that a miscarriage of justice has occurred.

***6** On the merits, these are nothing more than bold allegations without any basis. They are meritless.

*Ground Nine.*

*"Denied rights of speedy trial."*

The Supreme Court previously has adjudicated and decided this ground. While the period of time between arrest and final conviction was lengthy, a substantial period of time was properly attributed to the defendant. Having been previously adjudicated, this ground is barred pursuant to Rule 61(i)(4) because the defendant has shown no colorable claim that a miscarriage of justice has occurred which would cause the bar to be inapplicable.

*Ground Ten.*

*"Illegal detention sentence."*

In effect, the defendant, in this allegation, repeats that which was contained in Ground Eight concerning malicious prosecution and the use of false evidence. Again, the defendant's allegations are conclusory and baseless.

This ground is denied for the same reasons as set forth in Ground Eight.

*Ground Eleven.*

*"Invalid report."*

Again, the defendant attacks the quality of the State's evidence and the introduction of the victim's hearsay statements to the treating emergency staff at the hospital. He alleges that the reports and the nurses' testimony under oath were inconsistent and false. To the extent this is a repeat of the earlier allegations, it is denied for the same reasons set forth in Grounds Eight and Nine.

*Ground Twelve.*

*"Court's discretion; in allowing false information to go through."*

The defendant continues his general attack on the quality of the evidence by framing the allegation as an abuse of discretion by the Court in the admission of the evidence. Repackaging will not help. This ground is denied for the same reasons as set forth in Grounds Five, Eight and Nine.

*Ground Thirteen.*

*"Not allowing relevant testimony."*

The defendant renews his attack on the trial Court's rulings and his claim that the unlawful sexual intercourse was "bogus". These conclusory allegations form no basis for relief and this ground is denied for the same reasons as stated in Ground Five, Ground Six and Ground Eight.

*Ground Fourteen.*

*"Acting in bad faith by the prosecutor."*

In this claim, the defendant alleges that the prosecutor had a witness barred from Sussex Correctional Institution in Georgetown "in order to keep the truth from coming out." These conclusory allegations do not provide the name of the witness who is alleged to have been barred from Sussex Correctional Institution. The matter never was raised at the trial Court or in the Supreme Court. Therefore, this ground is barred for the same reasons as set forth in Ground Eight.

*Ground Fifteen.*

*"Opening arguments claiming overwhelming evidence ... but never proved."*

In this allegation, the defendant again takes the opportunity to renew his attack on the quality of the evidence the State presented by arguing that the opening statement was in bad faith and that the proceeding was a "mock trial". The defendant makes conclusory allegations, and there has been no showing that the State included in its opening statement al-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1995 WL 656783 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 6

legations which were not proven at trial and/or which prejudiced the defendant. This issue was not raised before the trial Court nor on appeal, and therefore, this ground is denied for the same reasons as set forth in Ground Eight.

*Ground Sixteen.*

*"Discovery ... shows no evidence that a crime was committed."*

*7 This is the final ground contained in the defendant's Rule 61 application. The defendant makes no specific discovery or Brady[FN1] allegations. This allegation is another attempt by the defendant to repackage his "you don't have anything on me" theory. The quality of the evidence in this case was overwhelming in spite of the victim not being present to testify at trial. It is apparent that the defendant merely is using Rule 61 as a platform to announce he is not guilty. There were no Brady violations pursued by the defendant below and on appeal and therefore, the final ground, Ground Sixteen, is denied for the same reasons as set forth in Ground Eight.

FN1. *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963).

In summary, the defendant raises no colorable claim that a miscarriage of justice took place either in the trial or on the appeal.

Defendant's motion for postconviction relief is denied.

IT IS SO ORDERED.

Del.Super.,1995.
In re Motion for Postconviction Relief, Def. ID#92S05488DI
Not Reported in A.2d, 1995 WL 656783 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2007, I electronically filed the attached documents with the Clerk of Court using CM/ECF. I also hereby certify that on May 17, 2007, I have mailed by United States Postal Service, the same documents to the following non-registered participant:

Edward Gibbs
SBI No. 00148876
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4612
james.wakley@state.de.us

Date: May 17, 2007