IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Edward Gibbs pro-se,
     Appellant,

   V.

Warden Thomas Carrol
     Appellee,

C.N. Act. No: 07-36-JJF

FILED

JUN 14 2007

RGscerman

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Appellant Response To State's Answer

Comes now, The Appellant, Edward Gibbs pro-se,
Pursuant to The Rules Governing Section 2254 Actions
28 U.S.C § 2254, Appellant State the following response:

1. Appellant will respond to the 1st claim: Superior court failed
to make an inquiry into the conflict: Appellant once again sends
his Exhibits 1 pgs. 4 ±5 Appellant informed court that Counsel
isn't subpoenaing witnesses and thats a conflict. See Appellant
motion Evidentiary Hearing, and Exhibits on Same claim.
Appellant Cites Campbell V. Rice 265 F3d 882: See page 4 Exhibit 1
Appellant left without Counsel when Judge invited Dunn to
Contradict her client U.S. V. Gonzalez 113 F3d 1026.
Also Appellant Cites Holloway 435 U.S. at 484-85 Automatically
reversal court fail to perform duty. Appellant was forced to
go to trial with a Attorney and a conflict, The Holloway case
And Glasser are precedent cases cited throughout Campbell
which issue is a constitutional issue.
Appellants understanding of the Law and research leads him to think
he has to notify the court of a conflict.

3. Supreme Court Errored; Supreme Court errored didn't hear Appellant ineffective Assistance counsel on Direct Appeal. There is no Delaware Law Superior court, Supreme court, that says ineffective Assistance counsel can't be raised on Appeal. Appellate raised the claims down in Superior court in his motion to Dismiss counsel an Extensive colloquy was held 12-19-2003. See Lewis v. state 757 A2d 714, Lewis was represented by counsel at trial and by Public defender on Appeal Appellant was represented by counsel at trial but filed his Direct Appeal pro-se and raised the issues in the Lower court ... U.S.-V. Finley 245 F3d 199, 204 (3 2001) court may hear ineffective on direct Appeal because defendant represented by new counsel ...

4. Appellant claim Superior court lacked Jurisdiction: See Del. const. Art.1 § 8, Appellant was represented by a Public defender who had Appellant to believe that if he waived his Preliminary hearing he would dispose of the F/A/c charge with a 30 day plea ...
Appellant didn't make a Knowing Voluntary waiver of the preliminary hearing. For a waiver to be effective it must be clearly established that there was an intentional relinquishment or abandonment of a known right or privilege ... 58 S.ct. 1019 86 S.ct. 1247 ... Super.ct. R.7 (b) waiver of indictment.
Appellant state that he has been served another miscarriage of Justice See counsel response to claim. A waiver must be in open court ...

Wherefore Appellant hopes and prays that this court will Reverse and Remand this case for a new trial in accord to the u.s. const. 6 Amend. And Appoint Effective counsel to represent Appellant.

Dated: June 12, 2007

Edward Gibbs pro-se

Edward Gibbs

D.C.C. 1181 Paddock Rd.

Smyrna Del, 19977

2. Appellant claim of Ineffective Assistance of counsel is that counsel did not Subpoena the Judge on Appellant witness list. See Exhibit 2 Transcripts 12-19-2003 Sentencing. pgs. 4&5.

Counsel Violated Appellant Sixth Amend. Right to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of counsel for his defense. Counsel Violated Appellant DE. Const. Art. 137 Right for obtaining witnesses in his or her favor, See Williams 544 F 2d 1258 (1979) pg. 125 williams and counsel incompatible, counsel never investigated what witness would say, counsel stated 12-19-03 that she didn't interview witnesses, In her Affidavit she states that she talked to cindy murray on the phone, she states it's a practice. The only evidence presented at trial was a modified Violation of Probation Sentence order; Violation of Probation isn't a criminal offense Judge Richard Stokes modified this order and Judge Stokes was the Judge that Violated Appellants Probation. In 1999 Appellant had a Rape charge and a Jury Trial and was aquited Adkins was the Prosecutor. Adkins charged Appellant with another Rape charge in Jan. 2000 Appellant had a Allwhite Jury trial and was aquited again, So Adkins and Judge Stokes Violated Appellants Probation, Appellant served 4 yrs. -1/2 level 5 and had 1yr. 9mo. level 4 Homeconfinement which was modified

to work release. Title 11 34 348 States Once a person is released from serving a level II Sentence they are considered Conditionally released. Appellant has Exhaused his Appeal Process and can raise Any ground that's been heard on Direct Appeal or Post conviction. Appellant denied Equal Protection, counsel represented Joe Sanders he had 7 Escapes on his record, Paula Ryan was Prosecutor, he pled to 2nd degree 3 yrs. level II.

COPY          Exhibit 1

1            IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

2                       IN AND FOR SUSSEX COUNTY

3      - - - - - - - - - - - -x
                              :
4      STATE OF DELAWARE       :        I. D. NO. 0305016899
                              :
5            v.                :          CRIMINAL ACTION NO.
                              :              03-06-0519
6      EDWARD C. GIBBS,        :
                              :
7                Defendant.    :
                              :
8      - - - - - - - - - - - -x

9                       T R A N S C R I P T
                               O F
10                     P R O C E E D I N G S

11                              Sussex County Courthouse
                               Georgetown, Delaware
12                              Wednesday, October 22, 2003

13           The above-entitled matter was scheduled for

14     hearing open court at 9:00 o'clock a.m.

15        BEFORE:

16           THE HONORABLE E. SCOTT BRADLEY, Judge.

17     APPEARANCES:

18           PAULA T. RYAN, Deputy Attorney General,
                appearing on behalf of the State of
19              Delaware.

20           CAROLE J. DUNN, Assistant Public Defender,
                appearing on behalf of the Defendant.
21

22

23

                        EILEEN G. KIMMEL
                     OFFICIAL COURT REPORTER

1              I wrote a letter to Ms. Dunn alerting her

2     that I had this and she could come and review it at any

3     time, but because of its being done by a court

4     reporter, I couldn't just give her a copy of it.  So

5     she came over to my office and reviewed it.  It is five

6     pages long.  If Mr. Gibbs wants to read it, he is

7     welcome to read it, but I will not provide a copy of

8     it.

9              THE COURT:  All right.  Do you have any

10    response to Mr. Gibbs' concerns about representation?

11             MS. DUNN:  Well, Your Honor, it is true that

12    I believe I did tell him some time ago that I would

13    come and talk to him about his case, and that could

14    have been just before the major trial started which was

15    concluded a couple weeks ago.  But I will say that we

16    have been in pretty constant communication through the

17    mail.

18             Mr. Gibbs has been sending me information

19    that he has researched in the law library there.  He

20    has very specific and strong feelings about what

21    constitutes the crime of escape after conviction.  I

22    have sent him case law on the subject and we have

23    discussed the case.  It is a one-count case and escape

EILEEN G. KIMMEL
OFFICIAL COURT REPORTER

1   after conviction is the charge, and the allegation is

2   not returning to the Work Release Center.

3          THE COURT:  You are obviously -- hang on a

4   second.  You are obviously satisfied that you will be

5   prepared, certainly, by next Thursday?  That's his

6   trial date.

7          MS. DUNN:  I feel prepared to go to trial,

8   Your Honor.  I will say that Mr. Gibbs and I have

9   approached this case differently as to the legal

10  definition of escape after conviction.

11         THE COURT:  All right.

12         MS. DUNN:  I don't believe it has affected my

13  representation, however.

14         THE DEFENDANT:  Excuse me.  One more issue,

15  okay?  She sent me this witness list, right, a few

16  months ago, and I filled it out and sent it to her.

17  She told me to send it to her ten days prior to my

18  trial.

19         I send her my list.  I have three witnesses

20  on there that I want her to subpoena for me.  She is

21  saying she is not going to do it.  So that is a

22  conflict there.

23         THE COURT:  Well, if we are still doing this

EILEEN G. KIMMEL
OFFICIAL COURT REPORTER

COPY    Exhibit 2

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR SUSSEX COUNTY

----------------------------X

STATE OF DELAWARE                    :

                                     :   ID No. 0305016899

        v.                           :   Criminal Action No.
                                         S03-06-0519
EDWARD C. GIBBS,                     :

        Defendant.                   :

----------------------------X

T R A N S C R I P T
O F
P R O C E E D I N G S

Sussex County Courthouse
Georgetown, Delaware
Friday, December 19, 2003

        The above-entitled matter was scheduled
for hearing in open court at 1:30 o'clock p.m.

        BEFORE:

        THE HONORABLE RICHARD F. STOKES, Judge.

    APPEARANCES:

        PAULA T. RYAN, Deputy Attorney General,
          appearing on behalf of the State of
          Delaware.

        EDWARD C. GIBBS, Defendant, pro se.
          CAROLE J. DUNN, Assistant Public Defender,
          standby counsel.

KATHY S. PURNELL
OFFICIAL COURT REPORTER

1            P R O C E E D I N G S

2            THE BAILIFF:  Good afternoon, Your Honor.

3    We have on the docket for sentencing Edward Gibbs.

4            Mr. Gibbs, come forward, please.

5            THE COURT:  Set before the Court this

6    afternoon are the matters of State v. Gibbs.  There

7    are several matters pending.  I have a violation of

8    probation, as Mr. Gibbs was on probation.  I have a

9    motion for a new trial.  I have a motion to have

10   Mr. Gibbs declared to be a habitual offender, and I

11   have the sentencing.  So I have several discreet

12   things to take care of this afternoon.

13           THE DEFENDANT:  Your Honor, excuse me.  I

14   filed a motion to dismiss counsel also.

15           THE COURT:  Well, Mr. Gibbs, you did reflect

16   in correspondence that you are not content with Ms.

17   Dunn.  Let me just ask you, number one, are you in a

18   financial position to hire a private lawyer?

19           THE DEFENDANT:  No, I'm not.

20           THE COURT:  You have the Office of the

21   Public Defender then to represent you.  How is it

22   that you are upset with Ms. Dunn?

23           THE DEFENDANT:  Well, I explained all of

1   this to Judge ~~Graves~~ Brabley on October 22nd.  It was a

2   conflict with us before my trial and it was never

3   resolved.  Before we went to trial, like I said on

4   October 22nd, Judge ~~Graves~~ Brabley told us to come back the

5   following week.  We came back the following week.

6   You was the trial judge.  So this was never resolved.

7   I had problems with her before in my trial.  She

8   never prepared my defense for me.  We never discussed

9   any defense, and you see what happened at trial. She

10  wasn't even prepared to represent me at trial. I

11  sent her a letter October 2nd explaining everything,

12  asking her to come and see me so we could prepare my

13  case for trial, and she never done neither.

14          THE COURT:  Well, you were charged with

15  escape after conviction.

16          THE DEFENDANT:  Exactly.  I was a

17  probationer.

18          THE COURT:  Escape after conviction, you

19  know as the charges go, is not the most difficult

20  case to show.

21          Do you have other things that you would like

22  to say about your disagreement or your differences

23  with Ms. Dunn?

1          THE DEFENDANT:  Do I have other things to

2     say?

3          THE COURT:  Yes.

4          THE DEFENDANT:  This is my motion.

5          THE COURT:  Well, I want to hear it from

6     you.  If you have things you want to say about Ms.

7     Dunn, say it now.

8          THE DEFENDANT:  Okay.  This is my motion to

9     dismiss counsel.  Carole Dunn, Paula Ryan, James

10    Adkins, Judge ~~Graves~~ Bradley, and also you, Judge Stokes,

11    conspired in this case to have me found guilty at

12    trial by an all-white jury.

13          Carole Dunn discussed my defense and the

14    case and the conflict with Paula Ryan, you know what

15    I'm saying.  That's lawyer-client confidentiality.

16    She revealed information pertaining to my

17    representation of consultation.

18    ✝     Carole Dunn never came to see me to discuss

19    the defense or to prepare for trial.  The Supreme

20    Court held that the Sixth Amendment right to counsel

21    attaches to the critical stages of a pre-trial

22    proceeding.  U.S. v. Wade.

23    ✝     Carole Dunn refused to subpoena witnesses

                    KATHY S. PURNELL
                 OFFICIAL COURT REPORTER

1    and present a defense for me.  I sent her a letter,

2    my Exhibit A, from 6-11 to 10-22.  Ms. Dunn never

3    came to see me.  And my transcript -- see the

4    transcript of October 22nd.  Right?  I sent her a

5    letter, you know, like I said, asking her to come and

6    see me, dated October 2nd.  She never came to see me,

7    you know.  And right here, it's U.S. v. Wade, you

8    know, critical stages, are the points in a criminal

9    proceeding when an attorney's presence is necessary

10   to secure a defendant's right to a fair trial.

11           I never had a fair trial.  You know, she

12   didn't present -- well, almost through the trial when

13   she told me, "Oh, now I got it," meaning she know

14   what I'm talking about.  In my correspondence that

15   was sent to her, she never took the time out to read

16   it or nothing.

17           Judge Bradley, he was to be the trial judge

18   on 10-22-03.  Me and Carole Dunn appeared before

19   Judge Bradley and I expressed that a conflict was

20   between defendant and counsel.  Judge Bradley stated

21   that he would look into the situation. Next week, in

22   which, you know, like I said, when we came back, you

23   was the judge.

KATHY S. PURNELL
OFFICIAL COURT REPORTER

```
 1              The State introduced sentencing orders from
 2    1988 in which I had already completed the sentence.
 3    I wasn't allowed to explain to the jury that
 4    conviction that I had from 1986 to 1991, was the
 5    conviction that I was serving, that I had served.   I
 6    had a 15-year sentence and my conviction was served
 7    from 1986 to 1991.  So how are they going to charge
 8    me with the escape after conviction?  Escape after
 9    conviction is Smith v. State.  It's 361 A.2d 327.  He
10    was serving a three-year sentence at Level 5.  He
11    went out on a 48-hour furlough and he never returned.
12    That's an escape after conviction.
13         I was a probationer in a halfway house and
14    Work Release facility.  A Level 4 probationer.  I
15    sent Ms. Dunn this information.  It was never
16    presented during my trial.  She never presented
17    nothing that I sent her toward my defense.
18              The defendant will be filing the complaint
19    against Judge Stokes, Judge Bradley, Paula Ryan, James
20    Adkins and Carole Dunn for violating defendant's --
21    for violating the Sixth and Fourteenth Amendment
22    rights.  Wherefore, defendant moves that the
23    Honorable Court will dismiss counsel and let the
```

1    defendant proceed pro se.

2         Here is a copy of my letter, my exhibit that

3    I sent to Ms. Dunn.  It's dated 10-2-03.  I am

4    sending you the witness list, with Judge Stokes and

5    Cindy Murray and David Phillips names.  Also enclosed

6    is a portion of some research that I've done on my

7    case to prove this escape is a third degree.

8         I sent you a letter 9-26-03, and you still

9    failed to respond to me.  I'm asking you in a

10   professional manner to please come see me before my

11   case review, the 22nd.  As you know, my trial is the

12   30th and Paula Ryan isn't offering me a plea and

13   she's seeking the habitual.  I'm going to close for

14   now.  I'll await your response.

15         ⚡  I never got a response.

16         THE COURT:  Is there anything else you would

17   like to say, sir?

18         THE DEFENDANT: ⚡ First, let me state for the

19   record I filed a motion to dismiss counsel 12-1-03.

20   I wasn't satisfied with her representation of my case

21   on 10-22-03. ⚡ I informed Judge Bradley that it was a

22   conflict between Ms. Dunn and me. ⚡I don't want her

23   on my appeal. ⚡I'll be filing for an ineffective

KATHY S. PURNELL
OFFICIAL COURT REPORTER

1    assistance of counsel against her.   The evidence

2    presented at trial didn't prove the charge of escape

3    after conviction.

4             Under Title 11, 301, you have to prove

5    beyond a reasonable doubt each element of the

6    offense.   They want to use a status sheet from 12 to

7    14 years ago that I pled guilty to and charged, that

8    I served a five-year sentence from 1988 to 1991 and

9    was released to probation. Virgil Sudler was an

10   inmate over in Work Release. He was serving a Level

11   5 sentence over in a Level 4 facility.   He went on

12   escape.   The State allowed him to plead guilty to

13   third-degree escape. They gave him 30 days Level 5.

14             Like I said, I was a probationer.   Okay. He

15   was serving a Level 5 sentence.   Okay?

16             THE COURT:   You have an escape third degree.

17   With your background, you could do 30 days of (k).

18             THE DEFENDANT:   Okay.   Now, can I proceed?

19   Okay.   I was a probationer just as Greg Foreman.   He

20   had four escapes.   He was charged with second-degree

21   escape after conviction and he got six months at

                    Reese Reese

22   Level 5, released. He was charged with second-degree

23   escape after conviction, picked up a charge July 4th,

KATHY S. PURNELL
OFFICIAL COURT REPORTER

1    Linwood Burton, he had four escapes.  He was charged
2    with escape after conviction.  He got 30 days Level
3    5.  Blaine Lord, he was charged with second-degree
4    escape.  Okay.  The only case -- okay.  Out of all
5    the people that went on escape this whole year, I was
6    the only one tried for escape after conviction.

7            THE COURT:  Well, look, you seem to be
8    saying other people got escape third degree.  You,
9    yourself, and your background got the benefit of that
10   way back when.  You want to say they should have
11   given me that.  But that is a wholly different
12   question of whether or not you are guilty of escape
13   after conviction.

14           THE DEFENDANT:  Okay.  I'm not going to
15   argue that fact.  I'm not going to argue that fact.
16   Well, being as though you talking about that, let's
17   talk about this Smith v. State.  Okay.  Escape after
18   conviction, how did you give an escape after
19   conviction and I was a probationer?  Do you have the
20   file, the paperwork I sent you?

21           MS. DUNN:  I have all the notes.

22           THE COURT:  Is there anything else you would
23   like to say?  You have made that point.

KATHY S. PURNELL
OFFICIAL COURT REPORTER

1          THE DEFENDANT:  Why not?

2          THE COURT:  Is there anything else you want

3     to say?

4          THE DEFENDANT:  Is that illegal for me to

5     say that?

6          THE COURT:  Is there anything else you would

7     like to say?

8          THE DEFENDANT:  Sure.  I will no longer

9     cooperate with Ms. Dunn.  You, as the judge, knew the

10    conflict between me -- well, Ms. -- I will no longer

11    cooperate with Ms. Dunn, Carole Dunn.  You, as well

12    as Judge Bradley, knew of the conflict.  Ms. Ryan

13    knew.  She knew about my witness list and sentencing

14    order through Carole Dunn, plus my defense.  You

15    lowered your standard of conduct by trying me by an

16    all-white jury.  If I hadn't told Carole Dunn to

17    stand up and brought it to her attention, she would

18    have never said nothing about the all-white jury.

19         THE COURT:  I was in the courtroom when she

20    made the observation about an all-white jury.

21         THE DEFENDANT:  I told her that.

22         THE COURT:  She was standing --

23         THE DEFENDANT:  I told her before she stood

KATHY S. PURNELL
OFFICIAL COURT REPORTER

1    up.   There she is, ask her didn't I tell her.

2              THE COURT:   Is there anything else you would

3    like to say?

4              ⊁ THE DEFENDANT:   What else can I say?   I'm

5    saying like this here, you know -- oh, the matter --

6    you say I'm here for a violation also?

7              ⊁ THE COURT:   Yes, indeed.

8              ⊁ THE DEFENDANT:   Which sentencing order are

9    we using today, the same one that was used at trial?

10             THE COURT:   I will get to that.   One step at

11   a time.   Is there anything else you want to say about

12   Ms. Dunn?

13             THE DEFENDANT:   I'll keep it to my myself.

14             THE COURT:   I want to hear it.   Is there

15   anything else you want to say?

16             THE DEFENDANT:   I think I said enough,

17   because --

18             THE COURT:   Well, let me tell you this.   If

19   you have something else you are holding back on, it

20   is not going to work in the future.   So if there is

21   anything you want to say about Ms. Dunn, say it now.

22             THE DEFENDANT:   It's not going to work in

23   the future.   I'm appealing this, anyway.

KATHY S. PURNELL
OFFICIAL COURT REPORTER

1           THE COURT:  I am asking you a straight

2      question, is there anything else you want to say

3      about Ms. Dunn?

4           THE DEFENDANT:  No, I'm not saying nothing.

5           THE COURT:  Step aside just for a minute.

6      Now, Ms. Dunn, he has made some serious accusations

7      about you.

8           MS. DUNN:  Yes, he has, Your Honor.

9           THE COURT:  Can you respond to them, please?

10           MS. DUNN:  Well, Your Honor, this is a

11      sentencing hearing.  Is this an appropriate forum?

12           THE COURT:  You had better believe it is

13      appropriate.

14           MS. DUNN:  I have a list, Your Honor, of the

15      meetings and the work that I've done on this case.  I

16      can tell the Court that Mr. Gibbs had an initial

17      intake interview not with me, but with our

18      investigator back in June.  He waived his preliminary

19      hearing on the 18th, and during which he spoke to

20      Mr. Moore of our office about his case.  He received

21      a client letter that I normally send out to the new

22      clients, on June 19th.  Actually, that was sent on

23      June 23rd.  Excuse me.

1        THE DEFENDANT:  Okay.  I figured you

2   wouldn't want to hear it.

3        THE COURT:  No, I have heard it.  There is a

4   difference.  There is a difference.

5        THE DEFENDANT:  Okay.  I'm not going to

6   argue with you, I just want to get this said on the

7   record, that's all.  Where was I at?

8        Okay.  Judge Stokes, your conduct as to my

9   rights to have a fair and impartial trial, you were

10  supposed to be my witness.  You were not impartial,

11  nor fair or disinterested.  You were a part of the

12  conspiracy.

13       THE COURT:  Excuse me.  What do you mean I

14  was supposed to be your witness?  You said I was

15  supposed to be your witness?

16       THE DEFENDANT:  Yeah.  I had you down on my

17  witness list.

18       THE COURT:  How in the world am I supposed

19  to be a witness for you?

20       THE DEFENDANT:  Because I had you down as a

21  witness.

22       THE COURT:  So anybody you put on the

23  witness list becomes your witness?

KATHY S. PURNELL
OFFICIAL COURT REPORTER

1           I received my first letter from him on June

2    30th.  I responded to his June 19th letter, enclosing

3    the escape after conviction statute which explains

4    the elements of that statute, that offense.  I

5    included in there the entire habitual offender

6    statute, noticing, as I reviewed his record, that

7    that might be a possibility down the line in this

8    case.  I sent that out on July 2nd of this past year.

9           I then received two letters from him, one

10   dated July 9, and one dated July 16.  I had a video

11   meeting with him from my office.  He was at SCI on

12   July 24.  That's Meeting No. 1.  I had another letter

13   from him dated that same day.  I responded to three

14   prior letters the following day, July 25.  I

15   responded to his letters of June 30, July 9, and July

16   16.  These letters and my video meeting

17   questions -- I was following up on.  I sent him

18   information.  I sent him a copy of our Rule 16

19   discovery requests.  I sent him a copy of the Smith

20   and the Flamer cases.  I sent him a copy on that

21   date, July 25th, of the witness form to request that

22   he send back to me any names that he wants subpoenaed

23   as witnesses.

KATHY S. PURNELL
OFFICIAL COURT REPORTER

1    Because it is my practice -- I don't speak

2    for all attorneys, but I need to know what those

3    witnesses are going to say.  So I prefer to have

4    those witnesses interviewed by an investigator of my

5    office and not talk directly to those witnesses,

6    since I don't want to involve myself in that process.

7    THE COURT:  That is a recognized technique.

8    Because if a lawyer speaks to a witness and it is

9    just a lawyer and a witness, if it is going to be a

10    contradiction on what the witness stated, then a

11    lawyer would have to become a witness and not an

12    advocate.  So it is recognized among trial lawyers

13    that it is desirable to have a third party take

14    witness statements, and that has been well recognized

15    for a long time.

16    MS. DUNN:  And I'll continue, Your Honor.

17    On July 31st I received a letter request from

18    Mr. Gibbs for a bill of particulars.  I also received

19    a letter on August 13th requesting that we put in a

20    motion to dismiss.  We had case review on September

21    2nd and I met with him on that date in Superior

22    Court.  That's a meeting, Personal Meeting No. 2, or

23    a face-to-face meeting.

KATHY S. PURNELL
OFFICIAL COURT REPORTER

Affidavit of mailing

State of Delaware
County of New Castle

Be it remebered that on this 12th day of June
___ A.D. 2007, According to Law deposes and Says
that he forwarded a copy of: Appellant Response To States
Answer

To: James Wakley                    Clerk District court
Department of Justice               Lock box 18 844 King St.
Carvel State off. bldg.             Wilmington Del, 19801
820 N. French St.
Wilm. Del. 19801

by united States mail with Postage pre paid.

Dated: 6-12-07                      Edward Gibbs Pro-se
                                    Edward Gibbs
                                    Del. corr. Center
                                    1181 Paddock Road
                                    Smyrna Del, 19977

M. Edward Gibbs
SBI# 148806    UNIT ___ 21
DELAWARE CORRECCTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

Legal mail

Clerk District court
Lockbox 18 844 King St.
Wilmington
Del
19801

Legal mail


UNITED STATES POSTAGE
JUN 13 2007
ZIPCODE 19977