

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Edward Gibbs Pro-Se,

    Appellant.

V.

Warden Thomas Carrol

    Appellee,

Civ. Act. No. 07-36-JJF

RECEIVED
SEP 24 2007
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Motion For Evidentiary Hearing

Comes now, the appellant, Edward Gibbs Pro-Se, and moves this Honorable court for a Evidentiary Hearing, Appellant was found guilty by a all white Jury of Escape After Conviction, Judge Richard Stokes presided, Appellant was Represented by public defender (Carole Dunn) 10-30-2003.

Appellant was Sentenced 12-19-2003, 20 years Habitual criminal, Appellant filed motion to Dismiss counsel before his Sentence, Appellant has filed his Direct Appeal to the Delaware Supreme court, and filed a Rule 61 Postconviction in which was denied by both Lower courts and never afforded Appellant a Evidentiary Hearing, Appellant filed for a Evidentiary Hearing 4-5-07 which the court Dismissed without Prejudice to renew after the State filed the record with the court, Appellant received a copy of the record 9-19-07 which consisted of a copy of all the decisions from the Lower courts and Appellants Petitions. Appellant is Requesting the court afford him a Evidentiary Hearing for the following reasons in accordance with Earl V. Ornoski, 431 F3d 1158 (12-16-2005)

Appellant alleges facts which, if proven true, may entitle him to relief on his conflict of interest, ineffective assistance of council, Supreme Court Filford Claims. Because Gibbs has never been afforded an Evidentiary hearing on none of these claims.

An Evidentiary hearing is required if Appellant, can show that; 1). The merits of the factual dispute were not resolved in the state hearing; 2) the state factual determination is not fairly supported by the record as a whole; 3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; 4) there is a substantial allegation of newly discovered evidence; 5) the material facts were not adequately developed at the state court hearing; 6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair hearing. See Earp 431 F.3d 1169 citing Townsend 83 S.ct 745. If the defendant can establish any one of those circumstances, then the state court's decision was based on an unreasonable determination of the facts and the federal court can independently review the merits of that decision by conducting an evidentiary hearing.

1. Appellant first claim is that Judge Bradley failed to make a inquiry into the conflict that was brought to the court Attention 10-22-2003. Appellant ask the court to look at Attorney General wakely response may 19, 2007, wakely states that Gibbs complaints about his attorney were fully explored by the trial court on two occasions before and after trial, wakely never sent no trial transcripts to support his claim. Appellant has establish one claim no.(3) and no.(1) also See no.(2) To denial appellant a hearing would be a abuse of discretion.

In showing a colorable claim, a Petitioner is "required to allege specific facts which, if true, would entitle him to relief."

Appellant has presented a colorable claim and resubmits his claims and Exhibits.

Wherefore the factual basis for Gibbs claims was adequately Proffered to the State court and he is entitled to an evidentary hearing he has not previously received a fair and fair opportunity to develop the facts of his claim and he presents a "colorable claim" for relief. In Seckinger may 403838 at 669-70, See also Williams, 384 at 586. 28 U.S.C.A. §2254(8)

Edward Gibbs Pro-se,

Edward Gibbs

D.C.C 1181 Paddock Rd.
Smyrna Del, 19977

Date: 9-21-2007

F.3d at 149. Finally, in this context, Supreme Court precedent involving the interpretation of federal statutes is not enough; the relevant body of decisional law is that interpreting the federal Constitution. *Early v. Packer*, 537 U.S. 3, 10 (2002) (Supreme Court's holdings on non-constitutional issues are not "relevant to the §2254(d)(1) determination"); *Johnson v. Carroll*, 369 F.3d 253, 259-62 (3d Cir. 2004).

*Claim One: Court inquiry into Gibbs' dispute with counsel*

Gibbs claims that Superior Court failed to perform an adequate investigation into his dispute with his attorney and, therefore, deprived him of his right to counsel. Gibbs first evinced his displeasure with his attorney prior to trial – complaining that she had not adequately prepared for his trial. (D.I. 3 at Ex. 1-3). As described by the Delaware Supreme Court in *Gibbs I*, Gibbs next voiced his complaints about his attorney before the trial court at sentencing.

> At the December 12, 2003 sentencing proceeding, Gibbs moved to dismiss his trial counsel on the basis of alleged incompetence. The Superior Court denied the motion. Nonetheless, after a lengthy colloquy, the Superior Court permitted Gibbs to proceed *pro se* for the remainder of the proceedings and directed his trial counsel to serve as standby counsel.

*Gibbs I* at *1. (D.I. 3 at Ex. 5). Though Gibbs couches his disagreement with his attorney in terms of conflict of interest, he makes no assertion as to what this conflict was. Though Gibbs might disagree, his dispute with counsel was more a disagreement over legal strategy than a conflict of interest. (*See* D.I.3 at Ex. 3, 4, 5). Gibbs' complaints about his attorney were fully explored by the trial court on two occasions – before and after trial. Superior Court, therefore, engaged in all the inquiry that was required to find the source of Gibbs' displeasure.

5

4) There is Substantial allegation of newly discovered evidence;
5) Material facts were not adequately developed at state court hearing;
6) For any reason it appears that state trier of fact did not afford Petitioner a full and fair hearing; 28 U.S.C.A § 2254 (d). Earp V. Ornoski 431 F 3d 1158 (2005)...

1) Defendant informed Judge Bradley 10-22-2003 that it was a conflict between him and Counsel, See, Exhibit 1 Pg. 3 Appellant informing Judge Bradley that he is not Satisfied with counsel; See, Campbell V. Rice 265 f 3d 882; By contrast, when counsel's potential conflict of interest is brought to the Court's attention, the trial Judge is on notice and must "take adequate Steps" to Protect the defendant's rights. Holloway, 435 U.S. at 484-85, 98 S.ct. 1173; To Properly Perform this duty, the trial Judge must make an inquiry into the Potential conflict. The Judge Didn't make a Proper inquiry into the conflict See, Appellant Exhibit-2 Pg. 4, When the court invited Dunn to contradict her client and to undermine his Veracity, Gibbs in effect "was left to fend for himself, without representation by counsel... The 6th Amendment guarantees the right to the effective assistance of counsel at all critical stages of a criminal proceeding... U.S. V. Vincent Gonzalez 113 F 3d 1026, See, Exhibit-3 Pg. 5 counsel states that her and Appellant approached Case differently, See, Exhibit-4 Pg. 6 the Judge States that he'll See us at Trial next week, the conflict was never resolved, Appellant Sent research to assist counsel on his defense, See Walter Mickens V. John Taylor 122 S.ct. 1240 [1,2,3] The Sixth Amendment Provide. that a criminal defendant shall have the right to "the assistance of counsel for his defense". U.S. V. Cronic 104 S.ct. 2039 "[We] have Presumed Prejudice when counsel labors under an actual conflict of interest.

U.S. v. Cronic 104 S.Ct. 2045 counsel failed to subject prosecution a case to meaningful adversarial testing; See, Exhibit-5 pg. 3-8 Transcript from 12-19-2003 sentencing Judge Stokes informed of conflict 10-22-2003 that wasn't resolved before Appellant trial and; the adversarial process protected by the 6th Amendment requires that the accused have counsel acting in the role of an advocate see foot note [17] To satisfy the constitution, counsel must function as an advocate for the defendant, as opposed to a friend of the court; Appellant on 12-19-2003 consequently [Gibbs] was denied effective assistance at the [sentencing hearing] when Judge Stokes told Appellant to [step aside] Menefield v. Borg 881 F2d 696, 698(9th cir. 1989) A sentencing hearing is such a "critical stage". U.S. v. Springer 51 F3d 861, 864 (9th cir. 1995) by proceeding with the sentencing hearing under these circumstances the superior court abused it's discretion. The appellant has proven 5 of the 6 claims to be awarded a evidentiary hearing, in accordance to Earl v. Ornoski...

2) Appellant raises ineffective assistance of counsel, counsel failed to subpoena Judge Stokes as Appellant witness; Appellant directs the courts attention to Exhibit-7 Pg. 15-16 from 12-19-03 Sentencing (Dunn) never stated why witness wasn't subpoenaed. Appellant was forced to go to trial with a lawyer that wouldn't subpoena his witness and had a conflict within which counsel never discussed a defense with Appellant; 6th Amendment right to counsel was violated; Brown v. Craven Pg. 1169 [2-4] Brown states that "y'all are having a trial and it's stated that counsel only provided a perfunctory defense" counsel in Appellant case never presented any information Appellant sent her, counsel did ask the court to dismiss the case with the information she received from Appellant, all counsel done was cross examine witnesses at trial.

See [Williams § 94 F 2d] 258 (1999) Pg. 1259 Williams and counsel incompatible and counsel and client were at serious odds. A Lawyers first duty is zealously to represent his/her client, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary") Sanders v. Ratelle 21 F 3d 1446 (9th cir! Pg. 1456. Counsel filed a Affidavit in regards to Appellants Post conviction Counsel was admitted to Delaware but 10-30-2000 out of state member being certified 2001. Appellant had a trial 2003 with counsel and counsel didn't know the elements of said charge neither did the State they had to get Jury instruction from Kent County and had a meeting in which Appellant was not included. Counsel stated at sentencing 12-19-03 She don't interview witnesses, friends, family. etc counsel admit she personally spoke with witness. See Florencio Rolan V. Donald Vaughn 445 F 3d 682 prejudice, citing Gray. 878 F 2d at 912 It furthermore in considering whether a petitioner suffered prejudice." [T]he effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial. A modified sentencing order is what was produced at trial, Judge Stokes sentenced Appellant on the V.O.P.


3) Appellant next claim Supreme court Errored; Supreme court didn't hear Appellant claim ineffective assistance on direct Appeal. On 12-19-03 Appellant filed a motion to dismiss counsel due to counsel ineffective representation of Appellant case; Court may review ineffective assistance claims on direct Appeal if record is sufficiently developed regarding merits of claim

U.S. v. Toms. 136 F3d 176, 182 (D.C. Cir. 1998) Appellant has dilligently Presented his claims to Superior court

and on direct Appeal the supreme court refused to entertain the claim due to Judge Stokes stating raise the claim on Postconviction". In Lewis v. State 757 A2d 714 First, since the question now raised by Lewis was not fairly presented to the trial Judge, it will not be address by this court unless "the interest of Justice so require". Lewis had to demonstrate plain Error. 2nd supreme court does not usually consider ineffective assistance of trial counsel claims in a direct Appeal". The court decides to address Lewis claims it presented Questions relating to the Sixth Amend' right to counsel, attorney ethics, Judicial responsibility, and fundamental fairness. Appellant have proven plain error in his claim against course and the Supreme court for not hearing this claim. PB. 113. The assistant public defender who provided Lewis with exemplary and Successful representation in this appeal did not represent Lewis at trial. Appellant filed his appeal pro-se, and should of been heard on direct Appeal.

4) Appellant claim Superior court lacked Jurisdiction. Appellant didn't make a valid waiver of his preliminary hearing. Counsel William Moore told Appellant to waive the preliminary hearing and he would get him a 30 day greater on case 3rd which is at the bottom of waiver form. See waiver form as Exhibit-1 dated 6-11-03, Appellant was coerced to sign the waiver. A waiver is valid only if made in open court after the def. has been advised of the charges against him or her and of his Constitutional right. SEE Fed. R. crim. P. 7(b); See e.g., U.S. v. Ferguson, 758 F.2d 843, 850-51 (2d Cir. 1985) waiver of Grand Jury indictment must be in open court, def. must be informed of nature and cause of accusation, and court must satisfied that defendant waived rights knowingly, intelligently, and Voluntarily); U.S. V. Moore, 37 F.3d 169, 173 (5th Cir. 1994)

Prejudice". Taken from websters Dictionary of Law. Injury or detriment to one's legal rights or claims (as from the action of another). see pg.9 last paragraph counsel states, That conclusion, however, does not mean that adversial testing of the State's case was not zealously Pursued, or that advocacy on behalf of defendant at trial was deficient. Exhibit-2 see The 2nd Paragraph same page, After seeking clarifications from the prosecutor's office she admits she couldn't advance a defense. Appellant request a evidentiary hearing because the material facts were not adequately developed at the state-court hearing. In Support of the above allegations and claims See, Earp v. ornoski 431 F3d 1164 [3][4] FN4. Also see, T. Dickson V. L. wainwright 683 f2d 351 (1982) [5][6] and [7][8] See, D. Stevens V. Dcc.162 S. supp. 28590 (2001) [10][11]. Appellant cite Dennis williams V. Frank Griswold 743 f.2d 1544 [13] It is well established that the standards governing the sufficiency of habeas corpus Petitions are less stringent when the Petition is drafted Pro-se and without the aid of counsel. FN 23.

therefore Appellant states he never filed for Evidentiary hearing in this court, and hopes and Pray that this court will order a Evidentiary hearing in accordance 28 USCA 32254 (b.c). and the Sixth Amendment.


Dated: 4-8-2007                    Edward Gibbs Pro-se,
                                   Edward Gibbs
                                   Dcc 1181 paddock R.d.
                                   Smyrna Del, 19977

1   accepting or I am not pleading guilty to it, right.

2               Second of all, she hasn't even came to see me

3   to discuss this case. You know what I am saying? So

4   her representation, I am not even satisfied with that.

5               Another thing, Ms. Ryan got some transcripts

6   from my bond review, right, and she is saying I can't

7   get no copy of it. I don't know why I can't get a copy

8   of it. I am saying the Rule 16 has been filed in this

9   case and there was no mention of no transcripts.

10             Last week, I received a letter from

11   Ms. Dunn talking about these transcripts. If she is

12   going to bring them in to use against -- you know, what

13   I am saying against me, I should be able to see them.

14            MS. RYAN: There was a transcript that I had

15   done of remarks that Mr. Gibbs made during the course

16   of his bond review when he was downstairs in the Court

17   of Common Pleas at preliminary hearing. It is my

18   thinking that the court reporter, both in the Court of

19   Common Pleas and the Superior Court, that is part of

20   how they make their money. When they do their

21   transcript, I can't make a copy. If they want to get a

22   copy, they can request a transcript themselves. I had

23   to pay for it.

4

1           I wrote a letter to Ms. Dunn alerting her

2    that I had this and she could come and review it at any

3    time, but because of its being done by a court

4    reporter, I couldn't just give her a copy of it.  So

5    she came over to my office and reviewed it.  It is five

6    pages long.  If Mr. Gibbs wants to read it, he is

7    welcome to read it, but I will not provide a copy of

8    it.

9           THE COURT:  All right.  Do you have any

10   response to Mr. Gibbs' concerns about representation?

11          MS. DUNN:  Well, Your Honor, it is true that

12   I believe I did tell him some time ago that I would

13   come and talk to him about his case, and that could

14   have been just before the major trial started which was

15   concluded a couple weeks ago.  But I will say that we

16   have been in pretty constant communication through the

17   mail.

18          Mr. Gibbs has been sending me information

19   that he has researched in the law library there.  He

20   has very specific and strong feelings about what

21   constitutes the crime of escape after conviction.  I

22   have sent him case law on the subject and we have

23   discussed the case.  It is a one-count case and escape

EILEEN G. KIMMEL
OFFICIAL COURT REPORTER

Exhibit — 3

1    after conviction is the charge, and the allegation is

2    not returning to the Work Release Center.

3              THE COURT:  You are obviously -- hang on a

4    second.  You are obviously satisfied that you will be

5    prepared, certainly, by next Thursday?  That's his

6    trial date.

7              MS. DUNN:  I feel prepared to go to trial,

8    Your Honor.  I will say that Mr. Gibbs and I have

9    approached this case differently as to the legal

10   definition of escape after conviction.

11             THE COURT:  All right.

12             MS. DUNN:  I don't believe it has affected my

13   representation, however.

14             THE DEFENDANT:  Excuse me.  One more issue,

15   okay?  She sent me this witness list, right, a few

16   months ago, and I filled it out and sent it to her.

17   She told me to send it to her ten days prior to my

18   trial.

19             I send her my list.  I have three witnesses

20   on there that I want her to subpoena for me.  She is

21   saying she is not going to do it.  So that is a

22   conflict there.

23             THE COURT:  Well, if we are still doing this

6

1    next Thursday, just be prepared to put on the record

2    before we get started the efforts you have undertaken

3    to prepare for the case, and you can respond to the

4    fact that you are not subpoenaing these witnesses.    It

5    may be your strategic position that they have nothing

6    to offer.    It is whatever it is, and you answer that

7    next week.

8              MS. RYAN:    I think that Mr. Gibbs -- the

9    issue that Ms. Dunn alluded to, the difference in their

10   approach to this, is that I don't believe that

11   Mr. Gibbs thinks that walking off of a violation of

12   probation sentence for a previous conviction

13   constitutes an escape after conviction.    I think that

14   is the fundamental difference or fundamental problem

15   that he is having with this.

16             THE COURT:    I sensed that.

17             THE DEFENDANT:    No, that's not it.    I have to

18   show you, but we don't have to get into that.

19             THE COURT:    We will see you next Thursday.

20             (Whereupon, proceedings in the above-

21        entitled matter were concluded.)

22

23

EILEEN G. KIMMEL
OFFICIAL COURT REPORTER

1  this to Judge Graves on October 22nd.  It was a

2  conflict with us before my trial and it was never

3  resolved.  Before we went to trial, like I said on

4  October 22nd, Judge Graves told us to come back the

5  following week.  We came back the following week.

6  You was the trial judge.  So this was never resolved.

7  I had problems with her before in my trial.  She

8  never prepared my defense for me.  We never discussed

9  any defense, and you see what happened at trial. She

10  wasn't even prepared to represent me at trial. I

11  sent her a letter October 2nd explaining everything,

12  asking her to come and see me so we could prepare my

13  case for trial, and she never done neither.

14            THE COURT:  Well, you were charged with

15  escape after conviction.

16            THE DEFENDANT:  Exactly.  I was a

17  probationer.

18            THE COURT:  Escape after conviction, you

19  know as the charges go, is not the most difficult

20  case to show.

21            Do you have other things that you would like

22  to say about your disagreement or your differences

23  with Ms. Dunn?

1          THE DEFENDANT:  Do I have other things to
2    say?
3          THE COURT:  Yes.
4          THE DEFENDANT:  This is my motion.
5          THE COURT:  Well, I want to hear it from
6    you.  If you have things you want to say about Ms.
7    Dunn, say it now.
8          THE DEFENDANT:  Okay.  This is my motion to
9    dismiss counsel.  Carole Dunn, Paula Ryan, James
     Brashey
10   Adkins, Judge Graves, and also you, Judge Stokes,
11   conspired in this case to have me found guilty at
12   trial by an all-white jury.
13         Carole Dunn discussed my defense and the
14   case and the conflict with Paula Ryan, you know what
15   I'm saying.  That's lawyer-client confidentiality.
16   She revealed information pertaining to my
17   representation of consultation.
18   ✢     Carole Dunn never came to see me to discuss
19   the defense or to prepare for trial.  The Supreme
20   Court held that the Sixth Amendment right to counsel
21   attaches to the critical stages of a pre-trial
22   proceeding.  U.S. v. Wade.
23   ✢     Carole Dunn refused to subpoena witnesses

1    and present a defense for me.  I sent her a letter,

2    my Exhibit A, from 6-11 to 10-22.  Ms. Dunn never

3    came to see me.  And my transcript -- see the

4    transcript of October 22nd.  Right?  I sent her a

5    letter, you know, like I said, asking her to come and

6    see me, dated October 2nd.  She never came to see me,

7    you know.  And right here, it's U.S. v. Wade, you

8    know, critical stages, are the points in a criminal

9    proceeding when an attorney's presence is necessary

10   to secure a defendant's right to a fair trial.

11        I never had a fair trial.  You know, she

12   didn't present -- well, almost through the trial when

13   she told me, "Oh, now I got it," meaning she know

14   what I'm talking about.  In my correspondence that

15   was sent to her, she never took the time out to read

16   it or nothing.

17        Judge Graves, he was to be the trial judge

18   on 10-22-03.  Me and Carole Dunn appeared before

19   Judge Graves and I expressed that a conflict was

20   between defendant and counsel.  Judge Graves stated

21   that he would look into the situation. Next week, in

22   which, you know, like I said, when we came back, you

23   was the judge.

1          The State introduced sentencing orders from
2    1988 in which I had already completed the sentence.
3    I wasn't allowed to explain to the jury that
4    conviction that I had from 1986 to 1991, was the
5    conviction that I was serving, that I had served.  I
6    had a 15-year sentence and my conviction was served
7    from 1986 to 1991.  So how are they going to charge
8    me with the escape after conviction?  Escape after
9    conviction is Smith v. State. It's 361 A.2d 327.  He
10   was serving a three-year sentence at Level 5.  He
11   went out on a 48-hour furlough and he never returned.
12   That's an escape after conviction.
13          I was a probationer in a halfway house and
14   Work Release facility.  A Level 4 probationer.  I
15   sent Ms. Dunn this information. It was never
16   presented during my trial. She never presented
17   nothing that I sent her toward my defense.
18          The defendant will be filing the complaint
19   against Judge Stokes, Judge Graves, Paula Ryan, James
20   Adkins and Carole Dunn for violating defendant's --
21   for violating the Sixth and Fourteenth Amendment
22   rights.  Wherefore, defendant moves that the
23   Honorable Court will dismiss counsel and let the

KATHY S. PURNELL
OFFICIAL COURT REPORTER

1    defendant proceed pro se.

2           Here is a copy of my letter, my exhibit that

3    I sent to Ms. Dunn.  It's dated 10-2-03.  I am

4    sending you the witness list, with Judge Stokes and

5    Cindy Murray and David Phillips names.  Also enclosed

6    is a portion of some research that I've done on my

7    case to prove this escape is a third degree.

8           I sent you a letter 9-26-03, and you still

9    failed to respond to me.  I'm asking you in a

10   professional manner to please come see me before my

11   case review, the 22nd.  As you know, my trial is the

12   30th and Paula Ryan isn't offering me a plea and

13   she's seeking the habitual.  I'm going to close for

14   now.  I'll await your response.

15        ✝    I never got a response.

16          THE COURT:  Is there anything else you would

17   like to say, sir?

18          THE DEFENDANT: ✝ First, let me state for the

19   record I filed a motion to dismiss counsel 12-1-03.

20   I wasn't satisfied with her representation of my case

21   on 10-22-03. ✝ I informed Judge Graves that it was a

22   conflict between Ms. Dunn and me. ✝I don't want her

23   on my appeal. ✝I'll be filing for an ineffective

KATHY S. PURNELL
OFFICIAL COURT REPORTER

1   assistance of counsel against her.   The evidence

2   presented at trial didn't prove the charge of escape

3   after conviction.

4          Under Title 11, 301, you have to prove

5   beyond a reasonable doubt each element of the

6   offense.   They want to use a status sheet from 12 to

7   14 years ago that I pled guilty to and charged, that

8   I served a five-year sentence from 1988 to 1991 and

9   was released to probation. ⅄Virgil Sudler was an

10  inmate over in Work Release. ⅄He was serving a Level

11  5 sentence over in a Level 4 facility.   He went on

12  escape.   The State allowed him to plead guilty to

13  third-degree escape. ⅄They gave him 30 days Level 5.

14          Like I said, ⅄I was a probationer.   Okay. ⅄He

15  was serving a Level 5 sentence.   Okay?

16          THE COURT:   You have an escape third degree.

17  With your background, you could do 30 days of (k).

18          THE DEFENDANT:   Okay.   Now, can I proceed?

19  Okay.   I was a probationer just as Greg Foreman.   He

20 ⅄ had four escapes.   He was charged with second-degree

21  escape after conviction and he got six months at
                              Reese Reese

22  Level 5, released. ⅄He was charged with second-degree

23  escape after conviction, picked up a charge July 4th.

Exhibit - 6

14

1        THE COURT: I am asking you a straight
2   question, is there anything else you want to say
3   about Ms. Dunn?

4        THE DEFENDANT: No, I'm not saying nothing.
5        THE COURT: Step aside just for a minute.
6   Now, Ms. Dunn, he has made some serious accusations
7   about you.

8        MS. DUNN: Yes, he has, Your Honor.
9        THE COURT: Can you respond to them, please?
10        MS. DUNN: Well, Your Honor, this is a
11  sentencing hearing. Is this an appropriate forum?
12        THE COURT: You had better believe it is
13  appropriate.

14        MS. DUNN: I have a list, Your Honor, of the
15  meetings and the work that I've done on this case. I
16  can tell the Court that Mr. Gibbs had an initial
17  intake interview not with me, but with our
18  investigator back in June. He waived his preliminary
19  hearing on the 18th, and during which he spoke to
20  Mr. Moore of our office about his case. He received
21  a client letter that I normally send out to the new
22  clients, on June 19th. Actually, that was sent on
23  June 23rd. Excuse me.

                    KATHY S. PURNELL
                 OFFICIAL COURT REPORTER

     1            I received my first letter from him on June

     2      30th.  I responded to his June 19th letter, enclosing

     3      the escape after conviction statute which explains

     4      the elements of that statute, that offense.  I

     5      included in there the entire habitual offender

     6      statute, noticing, as I reviewed his record, that

     7      that might be a possibility down the line in this

     8      case.  I sent that out on July 2nd of this past year.

     9            I then received two letters from him, one

    10      dated July 9, and one dated July 16.  I had a video

    11      meeting with him from my office.  He was at SCI on

    12      July 24.  That's Meeting that's the letter  I had another letter

    13      from him dated that same day.  I responded to three

    14      prior letters the following day, July 25.  I

    15      responded to his letters of June 30, July 9, and July

    16      16.   These letters and my video meeting

    17      questions -- I was following up on.  I sent him

    18      information.  I sent him a copy of our Rule 16

    19      discovery requests.  I sent him a copy of the Smith

    20      and the Flamer cases.  I sent him a copy on that

    21      date, July 25th, of the witness form to request that

    22      he send back to me any names that he wants subpoenaed

    23      as witnesses.

| 1 | Because it is my practice -- I don't speak |
| 2 | for all attorneys, but I need to know what those |
| 3 | witnesses are going to say.  So I prefer to have |
| 4 | those witnesses interviewed by an investigator of my |
| 5 | office and not talk directly to those witnesses, |
| 6 | since I don't want to involve myself in that process. |
| 7 | THE COURT:  That is a recognized technique. |
| 8 | Because if a lawyer speaks to a witness and it is |
| 9 | just a lawyer and a witness, if it is going to be a |
| 10 | contradiction on what the witness stated, then a |
| 11 | lawyer would have to become a witness and not an |
| 12 | advocate.  So it is recognized among trial lawyers |
| 13 | that it is desirable to have a third party take |
| 14 | witness statements, and that has been well recognized |
| 15 | for a long time. |
| 16 | MS. DUNN:  And I'll continue, Your Honor. |
| 17 | On July 31st I received a letter request from |
| 18 | Mr. Gibbs for a bill of particulars.  I also received |
| 19 | a letter on August 13th requesting that we put in a |
| 20 | motion to dismiss.  We had case review on September |
| 21 | 2nd and I met with him on that date in Superior |
| 22 | Court.  That's a meeting, Personal ▅▅▅▅▅▅▅ or |
| 23 | a face-to-face meeting. |

KATHY S. PURNELL
OFFICIAL COURT REPORTER

BOND REVIEL    Exhibit - 1

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

**IN AND FOR SUSSEX COUNTY**

THE STATE OF DELAWARE              :        WAIVER OF PRELIMINARY HEARING

                                         :        WAIVER OF INDICTMENT

                           vs.              :

Ed Gibbs.              :        I.D.#

                                         :

The above-named defendant, being advised of the nature of the charge or charges and knowing his rights, hereby waives, in open court and/or by written pleading, the preliminary hearing **and** prosecution by indictment; and consents that the proceeding may be by information instead of indictment.  In addition to Rule 16 discovery, the state shall provide copies of the police reports to the defense.

_____
                                        DEFENDANT

_____
                         COUNSEL FOR DEFENDANT

DATE: 6-14.03

oc:  Prothonotary
cc:  Department of Justice
     Attorney
     Defendant

*Can't we discuss of this cost with on Escape 3rd and 30 days 4204 k ?*

misdemeanor escape, and my July 25, 2003 letter to him confirms that fact.    (Exhibit 5).
Unfortunately, we were unable throughout the pendency of this case and negotiations with the
prosecutor, which continued through the final case review, to achieve that result. Defendant never
received a plea offer to anything less than Escape After Conviction.

Affiant asserts that the only "meaningful defense at trial" to defendant would have been a
defense composed of "information" he sent to me asserting that the facts of his case and case law
proved that he could be charged with and convicted of no more than Escape in the third degree.
Defendant's legal interpretations and arguments for defense are contained in a mailing which I
received on October 8, 2003, appended as Exhibit 18 hereto.

As mentioned earlier, after my research into the case law, and after seeking clarifications
from the prosecutor's office as regards their policies affecting their charging under the escape law, I
simply could find no legal support for defendant's interpretation; and, therefore, could not ethically
advance a defense at trial known to be contrary to prevailing Delaware law, involving legal
assertions that could not be made in the jury's presence, and proposing legal theories that the trial
Judge had previously ruled (at pre-trial argument on motion to dismiss) were unsustainable and
precluded under Delaware law.

Although I seriously considered and researched the interpretation and issues suggested by
defendant as regards his defense, affiant states that her legal conclusion that such a defense was
untenable was based on objective evaluation as regards the legal merit of the proposed argument.
That conclusion, however, does not mean that adversarial testing of the State's case was not
zealously pursued, or that advocacy on behalf of defendant at trial was deficient.

The October 30, 2003 trial transcript can be consulted for the cross examination which took
place of all the State's witnesses, objections that were made by affiant during the trial and motions

9

## Certificate of Service

I, Edward Gibbs _____, hereby certify that I have served a true

And correct cop(ies) of the attached: Motion for Evidentary Hearing

_____ upon the following

parties/person (s):

TO: The US District Court

844 King St. Lockbox 18

Wilmington Del, 19801

_____

_____


TO: James T. Wakley

Dept. of Justice

Carvel State off. bldg.

820 N. French St.

Wilmington Del, 19801


TO: _____

_____

_____

_____

_____


TO: _____

_____

_____

_____

_____


**BY PLACING SAME IN A SEALED ENVELOPE, and depositing same in the United States Mail at the Delaware Correctional Center, Smyrna, DE 19977.**

On this 21st _____ day of September _____ ,2007

Edward Gibbs _____



Legal mail

U.S.M. (X-RAY)

Clerk U.S. District Court
844 King St. Lockbox 18
Wilmington
Del. 19801

HME 8 Edward G. 1805
SBI# XW8876    DATE
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

UNITED STATES POSTAGE
PITNEY BOWES
$ 01.48
02 1A
0004608975    SEP 22 2007
MAILED FROM ZIP CODE 19977