IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Edward Gibbs pro-se,
   Appellant

V.

Warden Thomas Carrol
   Appellee,

Civ. Act. No: 07-36-JJF



## Motion For Evidentiary Hearing

Comes now, the appellant, Edward Gibbs pro-se, and moves this Honorable Court for a Evidentiary Hearing.

Appellant was found guilty by a all white jury of Escape After conviction, Judge Richard Stokes presided, Paula Ryan Prosecutor, Appellant was represented by Carole Dunn Public Defender 10-30-2003. Appellant was Sentenced 12-19-2003, 20 years as Habitual criminal, Appellant filed motion to dismiss counsel before his Sentencing, Appellant has Exhausted his appeal procedures in accordance to Delaware appeal process and Due process, Appellant has never been afforded a Evidentiary Hearing in the Lower courts. Appellant is requesting that this court afford him a Evidentiary Hearing, based on the allege claims in violation of Appellant's 8th and 14th Amendment of the U.S. Constitution and the record of 12-19-2003 which will be presented as Appellant's Exhibits, also Appellant is entitled to a Evidentiary Hearing in accordance with Earp v. Ornoski 431 F3d 1158 (12-16-2005) if appellant, can show that; 1. The merits of the factual dispute were not resolved in the state court hearing:

2. The State factual determination is not fairly supported by record as a whole; 3. The factfinding procedure employed by the state court was not adequate to afford a full and fair hearing; 4. There is a substantial allegation of newly discovered evidence; 5. The material facts were not adequately developed at the state court hearing; 6. For any reason it appears that the State trier of fact did not afford the Habeas applicant a full and fair hearing; Earp 431 F.3d 1169 citing Townsend 83 S.Ct. 745. If the defendant can Establish any one of those circumstances, the the State court's decision was based on an unreasonable determination of the facts and the Federal Court can independently review the merits of that decision by conducting an evidentiary Hearing. Appellant cites, Dennis Williams v. Frank Griswald 743 Fed 1544 [13] It is well established that the standards governing the sufficiency of Habeas corpus petitions are less stringent when the petition is drafted pro-se and without the aid of counsel. ED 23.

1. Appellant claim that he was denied due process of Equal protection Appellant was sentenced as a Habitual Criminal, the Prosecutor Paula Ryan stated in open court that Mr. Gibbs is not entitled to the same plea offers that are given to other people; Appellant was not offered a plea bargain only to plead Guilty. Appellant brings to the court attention Transcripts pages from 12-19-2003 Exhibit A pg. 34 in support of Appellant claim. Also Appellant will use as a Exhibit to prove the Due process Violation of Equal protection; Joseph Sanders had 7 Escapes and was prosecuted by Paula Ryan and represented by Carole Dunn Public Defender 2004; Sanders was sentenced as a Habitual Criminal to 3 years. Appellant received 20 years.

Appellant received a disproportion sentence compared to Sanders whose escape record and criminal history is just as bad as Appellant's. See State v. Stewart 791 A2d 143 (md 2002)

Proportionality review should be guided by objective criteria, including,

(i) The gravity of the offense and the harshness of the penalty;

(ii) The sentences imposed on other criminals in the same jurisdiction;

(iii) The sentences imposed for commission of the same crime in other jurisdictions".

2. Appellant next allege that the Superior court created a conflict when the judge told the Appellant to step aside Pg.14 Exhibit B 12-19-2003, left Appellant without the "Aide and proper assistance of counsel". See, U.S. v. V.Gonzalez 113f3d 1026; consequently [Gibbs] was denied effective assistance at the [sentencing] hearing". See Pg.1028 113F3d [5] when the court invited Dunn to contradict her client and to undermine his veracity, Gibbs in effect" was left to fend for himself, without representation by counsel....

3. Appellant next alleges that the Superior court defined the charge Escape After Conviction as a violent felony, Transcript pg.61 Exhibit C. Appellant states that the legislative intent has been misconstrued by Judge Stokes; 11§1253 Escape After Conviction class D felony; A person shall be guilty of escape after conviction if such person, after entering a plea of guilty or having been convicted by the court, escapes from a detention facility or from the custody of the Department of Health and Social Services or the Department of Correction. See Exhibit C-1 Special Escape Category Benchbook 2003. Pg.41

— cont —

Appellant also cites for his Exhibit C-2 U.S. V. Piccolo 441 F3d 1084 Pg. 1086 The District Court expressed doubt whether Piccolo's escape could be deemed a crime of violence, noting, "I don't view a walk away from the Clark center as in the same category as classic escapes obviously". See [1][2] a crime of violence is defined as any offense: under Piccolo he was serving time for Bank Robbery. Appellant was serving time for Violation Probation; order 86-12-0243 that's the same conviction Judge Stokes sentenced me to 20 years as a Habitual Criminal and Probation. See Appellant exhibits C-2-C-3 Appellant informed the Court that he was a probationer at the time of sentencing. To define the violence of Escape in Delaware Title 11 § 1253 Class C felony, class B, Felony". Class C provides that if the defendant uses force, or the threat of force against another person or possesses a deadly weapon at the time of escape it shall be a class C felony, If the defendant inflicts injury upon another person during the escape or from the time of escape until such person is again in custody, it shall be a class B felony". See Pg. 1087 U.S. V. Amparo 68 F.3d 1222, 1224-26 (9th cir. 1995) we Applied the categorical approach for a current conviction under 18 U.S.C. § 924 (c)(3)(B). A categorical approach is needed in Appellant case, Appellant has been denied 8th and 14th Amendment to the U.S. C.A. by sentencing Appellant to a 20 year Sentence while others in the same Jurisdiction has received lesser sentences for example: Appellant will start with New castle county; Charles Cobb 8 years Habitual Criminal Escape After Conviction; Williams v. State 2004 12 years Habitual criminal; Also, See; Appellant Exhibit C-4 People get less time for murder in Newcastle County. Now Appellant states Kent County Habitual criminal Sentences; Flamer V. State 8 years Woodlin v. State 8 years both Escape 2001. 2001

Appellant will name defendants that he named on 12-19-03
— cont —

from Sussex County, defendant's sentenced under Habitual criminal Joseph Sanders 7 Escapes 2004 3 years, Holden V. State 1997 8 years, Charleston V. State 1997 8 years, Faircloth V. State 8 years 1987. Appellant states this is cruel and unusual punishment a violation of 8th Amendment U.S.C.A., this 20 year sentence is greatly disproportionately to the conduct being punished. See Crosby V. State 824 D 2d 894 (2003) citing Harmelin V. Michigan 111 S.ct. 2680, Solem V. Helm 103 S.ct. 3001 all cases have been reversed & Remanded.

Appellant states that under Buckingham V. State 482 D 2d 327 (Del.Supr. 1984) under the Subsection here invoked, three (3) Separate convictions are required, each successive to the others; with some chance for Rehabilitation after each sentencing.

In Sentencing Appellant see Exhibit C-5 pg. 63 12-19-03 sentencing transcripts Judge read Appellant criminal history. Appellant cites Hall V. State 473 D 2d 352 to receive Habitual offender penalties for individuals who were not rehabilitated.

Wherefore Appellant having presented a colorable claim in accordance to Earp V. Ornoski 431 F 3d 1158 (3-16-05) proving at least 3 of the claims required and supporting each allegation with transcript Appellant request an Evidentiary Hearing in the interest of Justice.

Dated: March 31, 2008

Edward Gibbs pro-se,
Edward Gibbs pro-se
D.C.C. 1181 Paddock Rd,
Smyrna Del, 19977

## Certificate of Service

I, Edward Gibbs, hereby certify that I have served a true And correct cop(ies) of the attached: Motion Evidentiary Hearing _____ upon the following parties/person (s):

TO: Clerk us District Court
Lockbox18 844 King St.
Wilm Del, 19801

TO: James Wakely
Dept. Justice Carvel
State off. bldg. 820 N. French
St.
Wilm. Del, 19801

TO: _____

TO: _____

BY PLACING SAME IN A SEALED ENVELOPE, and depositing same in the United States Mail at the Delaware Correctional Center, Smyrna, DE 19977.

On this 1st day of April, 2008

Edward Gibbs



1      So Ms. Dunn saying to him at some point, as
2   he said during trial, "oh, I get it," she got it.
3   She knew, because we discussed what Mr. Gibbs wanted
4   the State to offer him.  Mr. Gibbs is not entitled to
5   the same plea offers that are given to other people
6   because each case is handled as an individual case.
7   There are policies in our office about how we handle
8   cases of Level 4 escapes and who are habitual
9   offender eligible, and I made Ms. Dunn aware of
10  those, of that situation.
11     That's where we were with Mr. Gibbs.  There
12  was not a discussion of, oh, you know, I'll offer him
13  this or I'll offer him that.  The only discussions we
14  had was, you know, perhaps Mr. Gibbs should, you
15  know, maybe have a bench trial rather than a jury
16  trial, because the arguments that he wants to make --
17  and this is all before a jury.  The arguments that he
18  wants to make about this charge, he's not going to
19  make in front of a jury because it is legal argument.
20     We had a discussion the morning of trial,
21  before the trial began, and it was explained to
22  Mr. Gibbs that he couldn't present the arguments
23  about whether this was or wasn't an escape after

KATHY S. PURNELL
OFFICIAL COURT REPORTER

1   THE COURT: I am asking you a straight
2   question, is there anything else you want to say
3   about Ms. Dunn?
4   THE DEFENDANT: No, I'm not saying nothing.
5   THE COURT: Step aside just for a minute.
6   Now, Ms. Dunn, he has made some serious accusations
7   about you.
8   MS. DUNN: Yes, he has, Your Honor.
9   THE COURT: Can you respond to them, please?
10  MS. DUNN: Well, Your Honor, this is a
11  sentencing hearing. Is this an appropriate forum?
12  THE COURT: You had better believe it is
13  appropriate.
14  MS. DUNN: I have a list, Your Honor, of the
15  meetings and the work that I've done on this case. I
16  can tell the Court that Mr. Gibbs had an initial
17  intake interview not with me, but with our
18  investigator back in June. He waived his preliminary
19  hearing on the 18th, and during which he spoke to
20  Mr. Moore of our office about his case. He received
21  a client letter that I normally send out to the new
22  clients, on June 19th. Actually, that was sent on
23  June 23rd. Excuse me.

KATHY S. PURNELL
OFFICIAL COURT REPORTER

Exhibit C.                                                              61

1  one year, nine months, suspended for two years Level
2  3 probation.
3         Now, as to the escape after conviction,
4  03-06-0519, escape after conviction is the triggering
5  felony. By law, escape after conviction is defined
6  as a violent felony. You have a criminal history.
7  You have a history that goes back to when you were a
8  juvenile. I am not going to dwell on the juvenile
9  part of it. But going back to 1979, you have a
10 criminal trespass disposition in the Court of Common
11 Pleas, November 24, 1979, disorderly conduct. They
12 put you in jail there for 60 days.
13        March 18, 1980, unauthorized use of a motor
14 vehicle, criminal trespass, committed a burglary
15 second, theft. You got six months imprisonment on
16 each charge in the Court of Common Pleas.
17        March 14, 1980, Court of Common Pleas,
18 theft, violation of probation. You had 60 days
19 imprisonment, as well as three months imprisonment.
20 You were fined for offensive touching on December 18,
21 1981 in the Court of Common Pleas.
22        In the Superior Court, Sussex County, you
23 were sentenced on a rape in the second degree, which

KATHY S. PURNELL
OFFICIAL COURT REPORTER

## Special Escape Category

Due to the peculiar nature of escape charges, which may be considered as deserving aggravated punishment even though they are primarily non-violent in nature, the following recommendations are presented:

| | | | |
|---|---|---|---|
| 11-1251 | Escape 3 -Misdemeanor A | UP TO 1 MONTH | LEVEL V |
| 11-1252 | Escape 2 -Felony G | UP TO 3 MONTHS | LEVEL V |
| 11-1253 | Escape after Conviction | | |

    Felony D                            UP TO 2 YEARS       LEVEL V
    Felony C (Threat of Force or Possession of a deadly weapon)
                                         1 YR TO 3 YRS        LEVEL V
    Felony B (Inflicted Injury)
                                         2 YRS TO 5 YRS      LEVEL V

**ESCAPE FROM LEVEL IV FACILITY**
    (Applies to all Half-Way House and Residential Treatment facilities)
    1st offense .............              Level V for 30 days (4204K)
    2nd offense .............            Level V for 90 days (4204k)
    Third & subsequent Offense..    Level V for 180 days (4204k)

Presumptive penalty for a first escape from Home Confinement is a lateral assignment to a Half-way House facility.

Sentencing Orders and worksheets should reflect the status as a Level IV Escape.

Policy 31: Any person arrested on a charge of escape from any Correctional facility, including both Level V and Level IV facilities, should be returned by the court to a Level V secured facility pending such hearings as may ensue from the charge. Persons charged with such escapes should not be released on bond.


Change (6/2003) Amends §1253, Title 11 of the Delaware Code by striking the phrase "from a detention facility" from that section and substituting in lieu thereof the following: "from a detention facility or other place having custody of such person".

| DEPARTMENT OF CORRECTION SENTAC MANUAL | STANDARD NUMBER: 1.03 | PAGE NUMBER: 2 of 5 |
|---|---|---|
| SECTION: LEVELS | TITLE: LEVEL IV PARTIAL CONFINEMENT | |

offender may also leave their residence for an emergency as defined by the program.

The minimum contact expectations of Home Confinement offenders shall be two face-to-face contacts per week, at least one of the contacts in the community. These contacts shall be in addition to a minimum daily home confinement period of nine (9) hours per day. Contact requirements and Home Confinement hours shall be set at an increased level as appropriate for each offender. The minimum contacts and hours are appropriate for offenders who have demonstrated compliance and stability with the program.

Due to the serious risk presented by Level IV offenders and the potential for damage to the electronic monitoring equipment, Home Confinement staff should respond to violations in a time frame as immediate as is appropriate for the nature of the violation. This response may include immediate arrest. The potential threat posed by the offender to the community, staff, and/or a specific victim(s) shall always be considered in the arrest decision.

2.(1) HALFWAY HOUSE- Offenders sentenced to a Level IV Halfway House shall be held in an accountable partial confinement residential program. These offenders shall be afforded the opportunity to prepare for the responsibility of community life by finding employment. They will also be able to utilize existing resources to assist themselves educationally, psychologically, and socially to change those conditions which brought them into the criminal justice system. Level IV Halfway Houses will utilize a phased system of progressive movement to encourage positive conduct. This phase system is designed to monitor offender conduct and lead to full community placement.

(2) Negative conduct shall be responded to by a limitation of program participation up to and including movement to full

| DEPARTMENT OF CORRECTION SENTAC MANUAL | STANDARD NUMBER: 1.03 | PAGE NUMBER: 3 of 5 |
|---|---|---|
| SECTION: LEVELS | TITLE: LEVEL IV PARTIAL CONFINEMENT | |

- incarceration awaiting court action. In the event an offender's conduct is disruptive to the point where the offender is a threat to the community or to the orderly operation of the Halfway House, emergency action can be taken to detain the offender at
- the nearest correctional facility while court action is initiated.

(2) - Level IV offenders have been defined as probationers for due process procedural consideration. The exception is for Level IV offenders leaving or failing to return to a Halfway House without authorization. Under these circumstances, a charge of "Escape" is to be filed immediately.

3. RESIDENTIAL SUBSTANCE ABUSE TREATMENT- Offenders sentenced to Level IV-"treatment" shall generally be sentenced to one of the following:

   a. A specific program which is defined and operated as a Level IV residential treatment facility.

   b. An existing treatment program which admits Level IV offenders and whose program standards are accepted as complying with the requirements of the Level IV sentence.

   Alternative treatment programs may be substituted for specifically ordered Level IV treatment programs with approval from the sentencing authority.

B. Program guidelines

   1. Due to the high level of risk and needs presented by Level IV offenders, suitability for the ordered program must be a consideration. If the specific circumstances of an offender interferes with their successful participation in or the overall operation of the program, the sentencing authority shall be contacted. The circumstances and a recommendation for alternative placement may be submitted. Note should also be

# Four sentenced in gang-related slaying

## Court records show 10 men drove to Homestead Road apartment where 24-year-old was shot, killed

By ESTEBAN PARRA
The News Journal

WILMINGTON — A Superior Court judge Thursday sentenced four men convicted in a 2006 gang-related slaying in Christiana Hundred.

Two of the four – Angel Flores, 22, and Fernando Tapia, 23, – also were sentenced for a shooting that occurred a month before the July 2005 death of Juan Monjaraz Garcia.

Flores and Tapia both pleaded guilty to second-degree assault and a weapons charge.

"This opened my mind and my heart," Flores told Superior Court Judge Jerome O. Herlihy before being sentenced. "Sorry for what I did. I just hope I get a second chance."

Herlihy, who reminded Flores he had moved from California to get away from gangs, said he was certain the young man was somewhat remorseful – yet there was no explanation.

"There is no excuse for what happened," Herlihy said before sentencing him to 10 years in prison. Tapia also received a 10-year prison term – seven of those years for his involvement in the June 19, 2006, shooting, in which the victim survived. Tapia was the driver, Flores was the shooter.

Hugo Sanchez, 19, and Juan Pedraza, 20, also were sentenced Thursday for their involvement in the July 16, 2006, killing of Garcia.

According to court records and testimony, Flores, Tapia, Sanchez, Pedraza and six other men drove to an apartment in the 600 block of Homestead Road and most of them got out of their vehicles brandishing baseball bats and knives. The group went after Garcia and three other men, police said.

Garcia was fatally shot, a 24-year-old man was stabbed in the abdomen and a 20-year-old man was shot in the right ankle. The fourth man was shot at, but not hit.

Sanchez was sentenced to three years in prison, while Pedraza, who did not get out of the vehicle, received time-served – 215 days.

The four pleaded guilty to charges of riot and second-degree conspiracy in the incident.

Herlihy is scheduled to sentence the six others involved in the Garcia killing today, including Francisco J. Tellez, 17, who pleaded guilty to manslaughter, and Leonardo D. Gomez, 18, who pleaded guilty to second-degree murder.

Contact Esteban Parra at 324-2299 or eparra@delawareonline.com.

*Exhibit C-1*
*1-31-2008*

---

# Man gets 20-year sentence for 2006 murder

*2-1-2008*

By ESTEBAN PARRA
The News Journal

WILMINGTON — Ryan D. Sinclair of Middletown was sentenced to 20 years in prison Friday for killing a friend who hit him with a machete after Sinclair repeatedly walked in on the victim having sex with a woman.

Sinclair, 23, formerly of the 200 block of Liborio Drive, pleaded guilty to the Nov. 16, 2006, second-degree murder of O'Neil Ebanks, 31. Sinclair, who admitted during his plea hearing last year to having been in a mental hospital, also pleaded guilty to a weapons charge.

Superior Court Judge William C. Carpenter Jr. also sentenced Sinclair to 10 years of probation when he is released.

According to police and court testimony, Sinclair was visiting Ebanks at his home in the first block of Stephanie Drive in Christiana Landing in Bear on Nov. 15, 2006.

Ebanks and a female friend went into a bedroom to have sex. Sinclair left the room, but returned several times asking for various items. This angered Ebanks, who then slapped Sinclair with the flat side of a machete several times.

Sinclair collected his items and left the house, but returned about five minutes later and knocked on the window. When he was let back in, he brandished a silver handgun and shot Ebanks four or five times.

Ebanks was taken to Christiana Hospital, where he died shortly after 3 a.m. on Nov. 16 – after telling police "Ryan" had shot him.

Contact Esteban Parra at 324-2299 or eparra@delawareonline.com.

---

# Gang-slay shooter sentenced to 18 years

## Four others involved in incident get prison terms

*2-1-2008*

By ESTEBAN PARRA
The News Journal

WILMINGTON — An 18-year-old man who pulled the trigger during a gang-related slaying two years ago was sentenced to prison Friday along with four others involved in the Christiana Hundred shooting death.

Leonardo D. Gomez was sentenced to 18 years in prison for the second-degree murder of 21-year-old Juan Monjaraz Garcia and a weapons charge.

"I want to apologize to society for things that I've done," said Gomez, adding that he was influenced by "people who I thought were my friends."

Superior Court Judge Jerome O. Herlihy also sentenced Francisco J. Tellez, 18, to eight years in prison for his involvement in the killing. Tellez, who pleaded guilty to manslaughter and a weapons charge, drove Gomez to the Homestead Road building. He entered the residence carrying a baseball bat – a fact Herlihy pointed out during the hearing.

Exhibit C-5

63

1   supervision. Possession of cocaine, you got a year
2   suspended for probation. On October 30, 1995, you
3   were initially charged with escape after conviction.
4   On November 2, 1995, you did a plea to escape in the
5   third degree, and you got 30 days imprisonment under
6   4204(k). On December 15, 1995, you were found to be
7   in violation of probation on an unlawful sexual
8   intercourse third degree charge and assault second
9   degree charge, and you received jail time. After
10  doing six months, the balance was suspended for
11  different levels of probation.
12          There was a violation of probation on
13  November 14, 1997. Violation of probation February
14  1998; referred to the Key Program. June 4, 1999,
15  violation of probation. That was appealed and that
16  was the one that referenced that the violation of
17  probation was done without the presence of Mr.
18  Callaway. It came back from the Supreme Court. They
19  said that you have a lawyer present. When it came
20  back from the Supreme Court, you were sentenced;
21  found to be more likely than not, but you were not as
22  good as expected while you were on probation, and you
23  got your jail time reimposed, and after a period of

KATHY S. PURNELL
OFFICIAL COURT REPORTER